**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

DANIELLE SCARPELLINO, Individually :
and as Next Friend of Minor Children :
JOHN DOE SCARPELLINO :
JANE DOE SCARPELLINO; :
WILLIAM MAISANO, Individually :
and as Next Friend of Minor Children :
JOHN DOE MAISANO ;
JANE DOE MAISANO ;
TIM CHAMBERLAIN, Individually :
and as Next Friend of Minor Children ;
JOHN DOE CHAMBERLAIN :
JANE DOE CHAMBERLAIN :
                        :                   :
                        :    DKT No.: 3:22-cv-1130
      Plaintiffs, :
                        :
v. :
                        :
PAUL FREEMAN; ANNINE CRYSTAL; :
JAMES PAPPA; E. MICHAEL REGAN; :
GIANCARLO MORENO; KATHLEEN :
BALESTRACCI; KARA DAVIS; :
BRUCE SUMNER; :
GUILFORD BOARD OF EDUCATION; :
                        :
      Defendants. :        SEPTEMBER 7, 2022

<u>**COMPLAINT**</u>

1. The Guilford Board of Education has adopted a policy and practice of
   discriminating against, and bullying, the children of parents who have taken a
   public and principled stand against the board's adoption of a species of
   pedagogy that teaches children the best way to combat so-called "systemic
   racism" is to engage in a different form of systematic racial discrimination. The
   parent plaintiffs have objected to this pedagogy as little more than race
   pandering; the board, its agents and employees have determined to ostracize, to

1

bully and to harass the plaintiff children of those parents. This action seeks redress for damages suffered as a result of the defendants' concerted effort to punish the children of critics of the board, and to compel conformity with a divisive ideology. The plaintiffs seek compensatory damages, and, as to individually named plaintiffs, punitive damages; it also seeks an award of attorney's fees. The parents bring this action to assure the promise of equal justice for all, white, black and otherwise.

## **PARTIES**

2. Plaintiff Danielle Scarpellino resides in Guilford, and she brings this action on behalf of herself and her son and daughter who attend/have attended Guilford Public Schools. She requests permission to bring the action on behalf of two of her children, John Doe Scarpellino, D.O.B, 5.9.09, and Jane Does Scarpellino, d.o.b. 12.3.04, pseudonymously, because they are minors.

3. John Doe Scarpellino is a minor child residing in Guilford, and is the son of Danielle Scarpellino.

4. Jane Doe Scarpellino is a minor child residing in Guilford, and is the daughter of Danielle Scarpellino.

5. Plaintiff William Maisano resides in Guilford, and he brings this action on behalf of himself and his daughter and son who attend Guilford Public Schools. He requests permission to bring the action on behalf of two of her children, John Doe Maisano, D.O.B. 9.26.06, and Jane Doe Maisano, D.O.B., 9.2.09, pseudonymously, because they are minors.

6. John Doe Maisano is a minor child residing in Guilford, and is the son of William Maisano.

7. Jane Doe Maisano is a minor child residing in Guilford, and is the daughter of William Maisano.

8. Plaintiff Tim Chamberlain resides in Guilford, and he brings this action on behalf of himself, his son, and his daughter, who attend Guilford Public Schools. He requests permission to bring the action on behalf of two of his children, John Doe Chamberlain, D.O.B.10.29.07, and Jane Doe Chamberlain, D.O.B. 11.16.05, pseudonymously, because they are minors.

9. Jane Doe Chamberlain is a minor child residing in Guilford and is the daughter of Tim Chamberlain.

10. John Doe Chamberlain is a minor child residing in Guilford and is the son of Tim Chamberlain.

11. Defendant Paul Freeman is the Superintendent of the Guilford Public Schools and has been so since 2011. He is sued in his individual capacity only.

12. Defendant Annie Crystal is an Assistant Superintendent of the Guilford Public Schools. She is sued in her individual capacity only.

13. Defendant James Pappa is an Assistant Principal at E.C. Adams Middle School in Guilford, Connecticut. He is sued in his individual capacity only.

14. Defendant E. Michael Regan is the Principal at E.C. Adams Middle School in Guilford, Connecticut. He is sued in his individual capacity only.

15. Giancarlo Moreno is an orchestra teacher at E.C. Adams Middle School in Guilford, Connecticut. He is sued in his individual capacity only.

16. Kathleen Balestracci is the chairwoman of the Guilford Board of Education in Guilford, Connecticut. She is sued in her individual capacity only.

17. Defendant Kara Davis is a teacher in the Guilford Public School system. She is sued in her individual capacity only.

18. Defendant Bruce Sumner is a teacher in the Guilford Public School system. He is sued in his individual capacity only.

19. Defendant Guilford Board of Education is the governmental agency for the Town of Guilford responsible for overseeing its public schools.

## JURISDICTION

20. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 as well as 42 U.S.C. § 1983. Venue is appropriate under 28 U.S.C. § 1391 because all of the parties are domiciled in Connecticut and all of the factual events giving rise to the cause of action occurred in Connecticut.

## FACTUAL ALLEGATIONS

### *Guilford Public Schools Adopt A Radical, Racist Agenda.*

21.     In June 2020, Defendant Freeman announced the Guilford High School would no longer use an American Indian as school mascot. On information and belief, Mr. Freeman believed this announcement to comport with a newfound sensitivity to racial and ethnic stereotypes.

22.     Freeman's June 2020 communication did not stop there. He went on to announce that Guilford High School would commit to a program of teacher training around the topics of "race, racism, justice, equity and identity." Freeman cited a man named Ibram X. Kendi's, who professes that "striving not to be racist is not good enough," and

he announced that Guilford Public Schools would be taking steps to be "actively antiracist."

23.     The Guilford Public Schools subsequently bought copies of Kendi's book, *How to Be an Antiracist* (2019), and mandated that every teacher read it before preparing to assign it to Guilford Public School students as reading material.

24.     This Kendi-esque racialism was to become an important new part of the pedagogy offered throughout the Guilford Public Schools.

25.     In October 2020, Plaintiff Scarpellino met with Freeman regarding the direction of the Guilford Public School's curriculum. During that meeting, Freeman indicated that Guilford Public Schools would be educating its teachers on how to implement a teaching program based on Kendi's book, *How to Be an Antiracist* (2019).

26.     Kendi describes the solution to racist discrimination as follows: "The only remedy to racist discrimination is antiracist discrimination. The only remedy to past discrimination is present discrimination. The only remedy to present discrimination is future discrimination." Ibram X. Kendi, *How to Be an Antiracist* 19 (2019).

27.     With Kendi's mandate in mind, the Guilford Board of Education retained two consultants, Dr. Donald Siler and Dr. Sharon Locke. Both Dr. Siler and Dr. Locke subsequently confirmed at a public Guilford Board of Education meeting that the "Culturally Responsive and Sustaining Pedagogy" that they were pursuing directly aligns with Kendi's racialist mandate.

28.     Not to be out done, Defendant Freeman then made comments at a Guilford Board of Education meeting that he would endeavor to "foreground race" in the Guilford Public School's educational operations, by which he apparently meant that the curriculum

would at all grade levels would focus on racial grievances. He subsequently then did lead Guilford Public Schools in such efforts.

29.     The Guilford Board of Education attempted to insert this new racial agenda into the curriculum of schools throughout the town in conjunction with a joint July 14, 2021 announcement with the Connecticut Department of Education on the importance of "culturally responsive" education.

30.     The result of this reworking of the Guilford Public Schools curriculum was to create an educational message that a person is either antiracist within Kendi's definition or a racist. Defendant Freeman subsequently drove this point home by telling Guilford Public School teachers that, if they did not become part of the antiracist solution as he envisioned it, they were part of the racist problem.

31.     The Defendants have subsequently used this approach to indoctrinate Guilford Public School students into Kendi's racialist agenda, an agenda that seeks to redress alleged "systemic racism" by imposing a new form of systematic racial preferences and programs.

***The Plaintiffs Exercise Their First Amendment Rights.***

32.     As the Defendants and the Guilford Public Schools began to impose their racialist agenda on Guilford Public School students, parents did not sit idly by. More than 300 parents formed a group called "No Left Turn In Education – Guilford (NLTE)" to petition the Guilford Board of Education, Defendants Freeman and Crystal, and the Guilford First Selectman, Matt Hoey, regarding the changes being made. That group included all of the adult Plaintiffs to this lawsuit.

33.    Plaintiff Scarpellino took an active role in the operations of the parental group, acting as the spokesman for their concerns to the Guilford Board of Education, Defendants Freeman and Crystal, and the Guilford First Selectman, Matt Hoey.

34.    The parents' concerns fell on deaf ears. Instead of hearing their legitimate concerns that the Guilford Public Schools were focusing more on indoctrinating their children in a radical political doctrine that is inherently racist, Defendants Freeman and Crystal repeatedly misled the parents as to their intentions by claiming that they were just trying to get Guilford Public School teachers to think about social justice issues and implying that the parents were racist because they did not blindly accept the radical agenda that the Defendants were attempting to impose.

35.    Members of the Guilford Board of Education took their disdain for the parents farther, publicly denigrating them at every opportunity.

36.    First Selectman, Matt Hoey, proved to be no more reasonable than other Guilford officials. In February 2021, he described Plaintiff Scarpellino as "a dog with a bone" in an email to Defendant Freeman, and he disclaimed any role in what was happening in the Guilford Public Schools.

37.    The parents subsequently realized by July 2021 that their concerns would not be heeded or respectfully addressed. At the suggestion of Plaintiff Scarpellino, they drafted a slate of five candidates to run for the Guilford Board of Education. The five candidates drafted included the Plaintiffs: Danielle Scarpellino, William Maisano and Tim Chamberlain.

38.     Prior to making this decision, none of the Plaintiffs had any political aspirations. Instead, they responded to the highest ideal of the American self-government: they participated to represent a common concern.

39.     In July and August 2021, the five Plaintiffs ran in and won the Republican Party's primary for nominations to the Guilford Public School Board, successfully ousting 3 sitting Guilford Board of Education members by 2-1 and 3-1 margins.

40.     The Plaintiffs' candidacies for the Guilford Board of Education captured national news attention, and Plaintiffs Scarpellino, Cusano, and Maisano appeared on national television (Fox News' "Fox & Friends First") to discuss their candidacies.

41.     In November 2021, the five Plaintiffs lost the general election.

### Danielle Scarpellino and Her Children

42.     The Scarpellino's troubles with the Defendants began on or about August 1, 2021 when Scarpellino exchanged text messages with Defendant Davis – a Guilford Public Schools teacher scheduled to teach Scarpellino's daughter in the upcoming year. Scarpellino asked her if she was engaged in a boycott of her business, and she denied that she was. After a discussion, Defendant Davis threatened to expose Scarpellino's father-in-law's criminal past if she continued to publicly criticize her and other Guilford Public School teachers in public.

43.     Scarpellino was forced to remove her daughter Jane Doe Scarpellino from Defendant Davis' Advanced Placement Language Arts class.

44.     Concurrently, Scarpellino's son, John Doe Scarpellino, began to experience targeting that continues to this day from his classmates and teachers. His background as a white, male, Christian student and his mother's advocacy and candidacy immediately

made him "a problem" with the framework that the Defendants adopted from Kendi's book.

45.     In September and December 2021, Defendant Sumner ramped up his targeting and bullying of John Doe Scarpellino by manufacturing reasons to discipline him and openly referencing his mother's political views. Defendant Sumner's targeting of John Doe son reached the point where other students in his class communicated to John Doe Scarpellino that they thought that Defendant Sumner was unfairly targeting him.

46.     Defendant Sumner did not stop there. In December 2021, he informed Defendant Scarpellino of 21 different occasions over a three-class period where John Doe Scarpellino son's COVID mask momentarily slipped below his nose – an occurrence naturally common in middle school aged children who have received little to no professional instruction on how to wear a surgical mask to optimum efficiency for hours each and every day.

47.     Instead of gently reminding John Doe Scarpellino to pull his mask up, Defendant Sumner lectured him on how he was endangering his classmates' lives and his teacher's life; Defendant Pappa demanded to know his vaccination status, and repeatedly sent John Doe Scarpellino to the principal's office while openly referencing his mother's political beliefs. Upon information and beliefs, Defendants Pappa continued Defendant Sumner's lectures and inquisitions. No other similarly situated child in Defendant Sumner's class was so treated.

48.     Defendant Sumner still was not satisfied. Despite his treatment of John Doe Scarpellino, the boy still earned an A in his first quarter. Instead of indicating that on his report card, Defendant Sumner did not include it at all, forcing Scarpellino to call the

Defendants and demand that it be included. The Defendants had no explanation for why it was not included.

49.     Defendant Sumner's treatment of John Doe Scarpellino ultimately reached the point where Scarpellino was forced to demand his removal from his class and the Defendants acquiesced. Her son, however, lost his opportunity to take Sumner's class.

50.     On or about December 16, 2021, a Guilford Board of Education member, Noel Petra, made a comment to a local newspaper specifically calling out the Plaintiffs and stating that the Board of Education was receiving countless communications from Guilford parents that the Plaintiffs were no longer welcome anywhere near the Guilford Public Schools.

51.     On or about December 16, 2021, John Doe Scarpellino was sexually assaulted by another student. While John Doe Scarpellino was standing at his locker, the other student came up behind him, formed his hands into a gun shape, and anally penetrated John Doe Scarpellino while opening his fingers wider to cause him pain.

52.     Despite the matter immediately being reported to Defendants Pappa and Regan, both Defendants initially failed to report the assault to either law enforcement or the Department of Children and Families (DCF) despite being required to do so by law as mandated reporters.

53.     When Scarpellino learned of the incident, she immediately contacted Defendant Pappa via email and demanded that the incident being reported to both law enforcement and DCF. Defendant Pappa initially tried to redirect Scarpellino until she made it clear in no uncertain terms that she was demanding reports to law enforcement and DCF.

54.    In their attempts to redirect Scarpellino and because of their disdain for her political views, Defendants Pappa and Regan did everything possible to keep from creating a paper record of their interactions with her, refusing to memorialize any actions or discussions in writing.

55.    Frustrated by the complete lack of support or understanding as to the seriousness of the incident, Scarpellino independently made a report to the Guilford Police Department.

56.    Defendant Pappa subsequently made a report to DCF in which he minimized what had happened, characterizing it as "goosing" and reducing a sexual assault to a mere school prank.

57.    Defendant Pappa's whitewashing of the incident was successful, and DCF found that the incident was not serious enough to fall under its jurisdiction.

58.    The aftermath of this assault and the defendants' attempt to hide it had devastating effect on John Doe Scarpellino. When he returned to school on December 20, 2022, other students who he had never met before came up to him, taunted him about being the student who had been anally raped, and hinted that he deserved it because of his mother's political beliefs. John Doe Scarpellino went from a "A & B" student to receiving grades of "C & D" despite Scarpellino's best efforts to keep his education on track.

59.    In or about the beginning of 2022, a student in the process of "transitioning" genders attempted to provoke a physical altercation with John Doe Scarpellino, telling him that Defendant Pappa had told the "transitioning" student that it was okay to verbally berate John Doe Scarpellino son because of his supposed intolerance toward that

student's "transition". John Doe Scarpellino believes, on religious grounds, that there are two genders, male and female, and that this is part of God's plan for humankind.

60.     On or about March 24, 2022, John Doe Scarpellino son was playing with fellow students, and, at some point, they began to chant "let us play" – a protest chant used to protest Connecticut's cancellation of the high school football season in 2020-2021 and the restrictions on students' ability to interact at school. The chanting drew the attention of a teacher's aide who subsequently photographed each individual student without obtaining their permission. When asked why she was photographing them, the teacher's aide responded that she wanted to "be able to identify the kids that are chanting."

61.     Upon information and belief, the teacher's aide communicated this information to Defendants Pappa and Regan and other Guilford Public School teachers for the purposes of targeting John Doe Scarpellino for discipline as a result of his political views.

62.     On or about March 29, 2022, a female student stabbed John Doe Scarpellino in the leg with a pen or pencil, drawing blood. This student had previous told John Doe Scarpellino, "Your mother is too political." Instead of taking disciplinary action, Defendants Pappa and Regan brushed the incident under the rug and implied that John Doe Scarpellino son was the cause of the hostility he was experiencing from other students on account of his religious and political views.

63.     From approximately March 29, 2022 to April 14, 2022, Defendant Moreno then assigned John Doe Scarpellino to recess detention and forced him to write apologies for ostensible "misbehavior" that Defendant Moreno refused to define clearly and, upon

information and belief, manufactured to target and political re-educate John Doe Scarpellino. On another occasion, Moreno falsely accused John Doe Scarpellino of making a racist remark.

64.     When John Doe Scarpellino son understandably could not write an "apology" to the satisfaction of Defendant Moreno, Moreno would repeat his detention and force him to make another guess at what kind of apology would be sufficient.

65.     Upon information and belief, Moreno targeted John Doe Scarpellino because Guilford Public School teachers classified him as a "dominate narrative" that is deemed culturally destructive on an internal scorecard used by Guilford Public School teachers. In particular, John Doe Scarpellino fit into this category because he is white, Italian male, straight, and from a traditional Catholic family that holds conservative political beliefs.

66.     Scarpellino was forced to intervene to stop the Defendant Moreno's targeting of her son and to seek the intervention of Defendant Regan.

67.     On or about June 1, 2022, John Doe Scarpellino son was accused by a student of color of making "Chinese eyes" and racist statements toward him. Defendant Regan immediately commanded him to meet with him in the principal's office where Regan attempted to browbeat him into making a confession of guilt.

68.     Defendant Regan's assumption of John Doe Scarpellino's guilt was a further perpetuation of the philosophy that Defendant Freeman and the Guilford Board of Education had adopted from Kendi's racialist propaganda. Within that philosophy and policy, John Doe Scarpellino was guilty until proven innocence because he was white and

he and his family do not embrace the radical, racist agenda promulgated by the Defendants.

*69.*     John Doe Scarpellino son held firm during the interrogation, which forced Defendant Regan to attempt to build a case against him. There was no case to be built. After interviewing other students who witnessed non-interaction, Regan found that their testimony supported John Doe Scarpellino's argument that he had never spoken to the student and had never seen him before.

### *William Maisano and His Children*

70.     The Maisano's troubles with the Defendants began on or about August 1, 2021 after Maisano began to run for a position on the Guilford Board of Education.

71.     His daughter Jane Doe Maisano was, and still is, repeatedly bullied in front of teacher's aides and teachers for her father's political beliefs. The bullying takes the form of open threats of violence and physical intimidation. Because the Defendants view Maisano's political beliefs and background as culturally destructive, they refuse to protect his daughter and his son from countless incidents of bullying that continue to this day.

72.     Maisano's son, John Doe Maisano, suffered more though. He has repeatedly been labelled "Whitey" and "White Boy" in front of teacher's aides and other of the Defendants staff. He has been labelled a racist and threatened with beatings from his classmates in front of the Defendants' staff who have taken no steps to intervene at all.

73.     Additionally, in a separate classroom incident during John Doe Maisano's Latin class, the teacher left the room, and girls in the class streamed a live pornographic video of a man masturbating into the class. The girls then began to interact with the

performer in a lewd and lascivious manner. When John Doe Maisano refused to join the entire class's viewing of the video because of his Christian beliefs, the students forced him to retreat to a corner where they surrounded him and accused him of being gay. When John Doe Maisano stated that his Christian and personal beliefs did not give him any sexual attraction toward men, the entire class accused him of being homophobic.

74.     When the teacher returned and sensed something was wrong, she spoke to the student privately and learned the entire incident. Upon information and belief, the Defendants took no disciplinary action or any steps to protect John Doe Maisano son from a repeat of the incident, dismissing Maisano and his son's concerns as being part of their intolerance for others.

75.     The Defendants have also publicly implied that John Doe Maisano's is a liar. When a fellow student wore a gas mask to school and made comments that he wanted to gas all Jews, John Doe Maisano reported it both to the school and to the police, giving a sworn statement to the Guilford Police Department. Despite multiple witnesses and photographic evidence of anti-Semitic behavior, the Defendants dismissed the report as not being supported by evidence and labelled Maisano and his son as agitators.

76.     Maisano's children have been forced to self-censor and become social outcasts within their respective schools because they believe that the Defendants cannot protect them and will target them for their beliefs.

### *Tim Chamberlain and His Children*

77.     Tim Chamberlain and his children's nightmare began long before he ran for a seat on the Guilford Board of Education.

78.     In fall 2020, Jane Doe Chamberlain was given a language arts assignment that required her to write a debate speech on a controversial topic. She picked a topic, researched it to the best of her ability, wrote it, and presented it. Her language arts teacher gave her a good grade and a high five for a job well done. Jane Doe Chamberlain's debate topic was global warming.

79.     The next day, she walked into her science class and was immediately attacked by her classmates and her teacher. Her teacher publicly identified her in front of the whole class as the individual who had given the speech and began to cross-examine her in front of the entire class regarding an assignment that was not even part of his class. He demanded that Jane Doe Chamberlain disclose her political views, her data, and her sources to the entire class.

80.     Jane Doe Chamberlain respectfully responded to this heavy-handed and aggressive cross-examination and then asked her teacher about his own sources. Instead of responding in the same respectful manner, her teacher asserted that he was a Ph.D., that he knew what he was talking about, and that his sources were irrelevant. He told Jane Doe Chamberlain that she had her head in the sand, got her news from Fox News, and drank the Fox News Kool-Aid.

81.     Jane Doe Chamberlain was subsequently targeted and harassed by this teacher and her classmates for the rest of the year, and the Defendants made no effort to stop it despite being made aware of the bullying.

82.     In June 2021, John Doe Chamberlain was playing a form of indoor football during recess. A fellow student – who had assaulted him multiple times throughout the year and who openly targeted him because of his opposition to affirmative action – waited

until he fell down and, with several other students as witnesses, kicked him in the face. Teacher's aides witnesses this and made no effort to break up the fracas, and John Doe Chamberlain incurred injuries that required medical attention.

83.    Despite knowing that the attacker bragging about his actions on social media, the Defendants took no disciplinary action against them. Upon information and belief, they failed to intervene or discipline students because of Chamberlain and his son's political views.

84. Chamberlain THEN ran for the Board of Education, AND the targeting of his children intensified.

85.    In Jane Doe Chamberlain's Fall 2021 Civics class, she was assigned to participate in a mock election and was given the role of the Republican candidate for president.

86.    The Defendants also assigned two other students who Jane Doe Chamberlain' had "no contact orders" from the Defendants – arising from past incidents of harassment and bullying directed at her by these students -- to this assignment. The Defendants then assigned these two students to question Jane Doe Chamberlain during the debate sessions. These two students – with the Defendants' approval – immediately began personally attacking Jane Doe Chamberlain as a racist.

87.    The teacher then selectively edited the requirements of the assignment after explaining it to the entire class. The teacher then told Jane Doe Chamberlain to do something different from the rubric and when it came time for grades, the teacher marked off points for not following exactly what the rubric said. Upon information and belief, the

teacher took these actions as a form of retaliation against Jane Doe Chamberlain because of her father's his candidacy for the Guilford School Board and his political views.

88.     During the final debate, Jane Doe Chamberlain asked her vice-principal to sit in on the final assignment of this class because she believed that she would not be treated fairly. True to form, the teacher bullied Jane Doe Chamberlain debate at all, cutting her off every time she attempted to cite facts or data. Frustrated with Jane Doe Chamberlain's poise in the debate, the teacher attempted to force her to answer questions that had not actually been posed to her.

89.     Despite the vice-principal being present to witness the behavior, the Defendants took no steps to remedy the unfair treatment that Jane Doe Chamberlain received – both for her own political views and those of her father's.

90.     Additionally, in Fall 2021, both of Chamberlain's children were harassed. Jane Doe Chamberlain was assaulted at a Guilford High School football game in front of four of the Defendants' staff who took no steps to protect them.

91.     The harassment and assault started when Jane Doe Chamberlain was asked by a classmate if she was dating her own brother, implying that she was engaged in an incestuous relationship with him. When Jane Doe Chamberlain asked to be left alone, another male classmate knocked her off the stone ledge that she was on while watching the football game.

92.     Like a classic schoolyard bully, the boy backed down when John Doe Chamberlain intervened to prevent a further assault on his sister.

93.     Minutes later, two other boys that Jane Doe Chamberlain did not know came up behind her and attempted to put their arms around her and grab her.

94.     Jane Doe Chamberlain and John Doe Chamberlain were then surrounded by classmates in front of the Defendants and were asked aggressively if they supported the Ku Klux Klan, and various other harassing questions. This harassment was recorded by classmates..

95.     In the following days, the harassment so intensified that the Defendants were forced to escort Jane Doe Chamberlain to her classes for her safety.

96.     At various other times and on different occasions Jane Doe Chamberlain and John Doe Chamberlain were either bullied, harassed on account of their religious beliefs or attacked for not agreeing with politically orthodox views such as the threat posed by global warming.

97.     The Defendants' initial failure to intervene when Jane Doe Chamberlain was assaulted twice was retaliatory inaction because of the Chamberlains' political and religious beliefs and Jane Doe Chamberlain's refusal to toe the "woke" political views peddled by the Defendants.

98.     Subsequently, in a conversation with Defendant Balestracci, Balestracci bluntly told Chamberlain that his and his daughter's religious and political beliefs were unacceptable and dangerous and that they rendered them intolerant to the Guilford Board of Education's efforts around gender and sexuality. She then informed him that there was no place in the Guilford Public School system for those beliefs at all.

99.     When Chamberlain attempted to raise Balestracci's comments to Defendant Freeman, Defendant Freeman simply reaffirmed Balestracci's militant expression of the Guilford Public School's policies.

## COUNT ONE – RETALIATION IN VIOLATION OF THE FIRST AMENDMENT

100.    Paragraphs 1 through 99 are hereby incorporated in this count.

101.    The Plaintiffs and their children have indisputably engaged in protected activities under the First Amendment by campaigning for political office, petitioning the Defendants and other Guilford governmental entities for the redress of their grievances, and commenting on matters of critical public concern.

102.    The Defendants have retaliated against the Plaintiffs and their children for their protected activities under the First Amendment by, among other things alleged previously:

   a.   Permitting the repeated physical assault of the Plaintiffs' children;

   b.   Deliberately whitewashing a sexual assault committed upon Plaintiff John Doe Scarpellino so as to prevent law enforcement and the Department of Children and Families from intervening in the matter and punishing the perpetrators;

   c.   Failing to take any disciplinary action toward the Plaintiffs' children's attackers;

   d.   Telling students that it is okay to physically assault the Plaintiffs' children because they allegedly are intolerant toward transgender and gay individuals;

   e.   Confronting the Plaintiffs' children publicly and interrogating them on their religious and political beliefs that bear no relationship to the classes that the Plaintiffs' children are attending;

f.  Intentionally altering the requirements of school assignments, telling all students except the Plaintiffs' children of the alterations, and then deducting points from the Plaintiffs' children's grades for alleged failure to comply with the assignment requirements;

g.  Officially telling the Plaintiffs and their children that their political and religious beliefs are unacceptable and informing them that there is no place for them in the Guilford Public Schools.

103.  The Defendants' actions have forced the Plaintiffs and their children to self-censor their speech.

104.  The Defendants' actions constitute a violation of the First Amendment.

## COUNT TWO – COMPELLED SPEECH IN VIOLATION OF THE FIRST AMENDMENT

105.  Paragraphs 1 through 104 are hereby incorporated in this count.

106.  The Plaintiffs and their children have expressed their political and religious beliefs pertaining to white privilege, critical race theory, and LGBTQ issues through political candidacy, political speech, and casual conversation.

107.  The Defendants have sought to compel the Plaintiffs not to merely acknowledge the Defendants' positions on these issues and intellectually engage with them, but also to affirm that the Defendants' views are the only correct ones. The Defendants' acts of compulsion include but are not limited to:

a.  Permitting the repeated physical assault of the Plaintiffs' children;

b.  Deliberately whitewashing a sexual assault committed upon John Doe Scarpellino so as to prevent law enforcement and the Department of

Children and Families from intervening in the matter and punishing the
perpetrators;

c. Failing to take any disciplinary action toward the Plaintiffs' children's
attackers;

d. Telling students that it is okay to physically assault the Plaintiffs' children
because they allegedly are intolerant toward transgender and gay
individuals;

e. Confronting the Plaintiffs' children publicly and interrogating them on
their religious and political beliefs that bear no relationship to the classes
that the Plaintiffs' children are attending;

f. Intentionally altering the requirements of school assignments, telling all
students except the Plaintiffs' children of the alterations, and then
deducting points from the Plaintiffs' children's grades for alleged failure
to comply with the assignment requirements;

g. Officially telling the Plaintiffs and their children that their political and
religious beliefs are unacceptable and informing them that there is no
place for them in the Guilford Public Schools.

108.    The Defendants' actions have forced the Plaintiffs and their children to self-
censor their speech and, in some instances, utter speech that violates their beliefs.

109.    The Defendants' actions constitute a violation of the First Amendment.

## COUNT THREE – RELIGIOUS DISCRIMINATION IN VIOLATION OF THE FIRST AMENDMENT

110.    Paragraphs 1 through 110 are hereby incorporated in this count.

111.   The Plaintiffs and their children hold sincere religious beliefs regarding LGBTQ issues, pornography, and various other social issues. They have respectfully expressed those beliefs through political candidacy, political speech, and casual conversation.

112.   The Defendants discriminated against the Plaintiffs and their children on the basis of their religious beliefs. The Defendants' acts of discrimination include but are not limited to:

h.   Permitting the repeated physical assault of the Plaintiffs' children;

i.   Deliberately whitewashing a sexual assault committed upon Plaintiff John Doe Scarpellino so as to prevent law enforcement and the Department of Children and Families from intervening in the matter and punishing the perpetrators;

j.   Failing to take any disciplinary action toward the Plaintiffs' children's attackers;

k.   Telling students that it is okay to physically assault the Plaintiffs' children because they allegedly are intolerant toward transgender and gay individuals;

l.   Confronting the Plaintiffs' children publicly and interrogating them on their religious and political beliefs that bear no relationship to the classes that the Plaintiffs' children are attending;

m.   Intentionally altering the requirements of school assignments, telling all students except the Plaintiffs' children of the alterations, and then

deducting points from the Plaintiffs' children's grades for alleged failure to comply with the assignment requirements;

n. Officially telling the Plaintiffs and their children that their political and religious beliefs are unacceptable and informing them that there is no place for them in the Guilford Public Schools.

113.   The Defendants' actions have forced the Plaintiffs and their children to self-censor their religious beliefs and, in some instances, utter speech that violates their religious beliefs.

114.   The Defendants' actions constitute a violation of the First Amendment.

### COUNT FOUR – DISCRIMINATION IN VIOLATION OF THE FOURTEENTH AMENDMENT'S EQUAL PROTECTION CLAUSE

115.   Paragraphs 1 through 114 are hereby incorporated in this count.

116.   The Defendants have adopted the radical, racist philosophy of Ibram X. Kendi. Among the specific tenets of Kendi's philosophy that the Defendants have adopted are two principles:

a. If someone is not actively antiracist, they are part of a racist patriarchy that is a problem in American society and must be destroyed.

b. "The only remedy to racist discrimination is antiracist discrimination. The only remedy to past discrimination is present discrimination. The only remedy to present discrimination is future discrimination." Ibram X. Kendi, *How to Be an Antiracist* 19 (2019).

117.   Upon information and belief, the Defendants train their staff on frameworks to classify students on the basis of their race, gender, sexual orientation, and religious beliefs – the first principle that they have adopted from Dr. X. Kendi.

118.   The Defendants have classified the Plaintiffs and their children as part of a "dominate narrative" that is deemed culturally destructive. The factors that the Defendants have used are, upon information and belief, as follows:

    a.   The Plaintiffs and their children are white;

    b.   The Plaintiffs and their children may be males;

    c.   The Plaintiffs and their children are "cisgender";

    d.   The Plaintiffs and their children are heterosexual;

    e.   The Plaintiffs and their children hold traditional religious beliefs;

    f.   The Plaintiffs and their children form traditional nuclear families.

119.   The Defendants then couple these factors with the Plaintiffs' political beliefs to classify them as culturally destructive and intolerant with no regard for their individual behavior.

120.   Once they have arrived at classifying the Plaintiffs and their children as part of a "dominate narrative" that is deemed culturally destructive, the Defendants proceeded to the second part of Kendi's philosophy: actively discriminating against the Plaintiffs and their children on the basis of their race, gender, sexual orientation, religion, and familiar backgrounds. The Defendants' acts of discrimination include but are not limited to:

    o.   Permitting the repeated physical assault of the Plaintiffs' children;

    p.   Deliberately whitewashing a sexual assault committed upon Plaintiff John Doe Scarpellino so as to prevent law enforcement and the Department of Children and Families from intervening in the matter and punishing the perpetrators;

q.  Failing to take any disciplinary action toward the Plaintiffs' children's attackers;

r.  Telling students that it is okay to physically assault the Plaintiffs' children because they allegedly are intolerant toward transgender and gay individuals;

s.  Confronting the Plaintiffs' children publicly and interrogating them on their religious and political beliefs that bear no relationship to the classes that the Plaintiffs' children are attending;

t.  Intentionally altering the requirements of school assignments, telling all students except the Plaintiffs' children of the alterations, and then deducting points from the Plaintiffs' children's grades for alleged failure to comply with the assignment requirements;

u.  Officially telling the Plaintiffs and their children that their political and religious beliefs are unacceptable and informing them that there is no place for them in the Guilford Public Schools.

121.  Upon information and belief, the Defendants have not treated any similarly situated students as poorly as they have treated the Plaintiffs and their children.

122.  The Defendants' actions constitute impermissible discrimination in violation of the Fourteenth Amendment's Equal Protection Clause based on the Plaintiffs' and their children's race, gender, sexual orientation, religion, and familiar backgrounds

## **COUNT FIVE – COMMON LAW NEGLIGENCE**

123.  Paragraphs 1 through 122 are hereby incorporated in this count.

124.  The Defendants had a legal duty to protect the Plaintiffs' children from physical harm while their children were in the Defendants' custody.

26

125.   The Defendants breached that duty repeatedly by permitting the Plaintiffs' children to be physically assaulted in front of their staff without intervention.

126.   The Defendants' breach of their duty to protect the Plaintiffs' children caused injury to the Plaintiffs' children.

127.   The Defendants' actions constitute common law negligence.

## COUNT SIX – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

128.   Paragraphs 1 through 127 are hereby incorporated in this count.

129.   The Defendants' conduct as described previously and incorporated herein was extreme and outrageous.

130.   The Defendants' conduct was intentional.

131.   The Defendants' conduct caused the Plaintiffs and their children severe emotional distress

Wherefore, the Plaintiffs seek:

    A.  Compensatory damages;

    B.  Punitive damages;

    C.  Attorney's fees;

    D.  Any and all further relief that the Court deems just and equitable.

## CLAIM FOR A JURY

The Plaintiffs claim a trial by a jury in this matter.

Date: September 7, 2022

Signed,

THE PLAINTIFFS

/s/ Norman A. Pattis /s/
/s/ Kevin M. Smith /s/
NORMAN A. PATTIS, ESQ.
KEVIN M. SMITH, ESQ
PATTIS & SMITH, LLC
383 Orange Street
New Haven, CT 06511
Tel:  (203) 393-3017
Fax: (203) 393-9745
npattis@pattisandsmith.com
ksmith@pattisandsmith.com