**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

DANIELLE SCARPELLINO, Individually
and as Next Friend of Minor Children
JOHN DOE SCARPELLINO and JANE
DOE SCARPELLINO;
WILLIAM MAISANO, Individually and as
Next Friend of Minor Children
JOHN DOE MAISANO and JANE DOE
MAISANO;
TIM CHAMBERLAIN, Individually and as
Next Friend of Minor Children
JOHN DOE CHAMBERLAIN and JANE
DOE CHAMBERLAIN,

          Plaintiffs,

  v.

PAUL FREEMAN; ANNINE CRYSTAL;
JAMES PAPPA; E. MICHAEL REGAN;
GIANCARLO MORENO; KATHLEEN
BALESTRACCI; KARA DAVIS; BRUCE
SUMNER; and THE GUILFORD BOARD
OF EDUCATION,

          Defendants.

Civil Action No.
3:22 - CV - 1130 (CSH)

**MARCH 14,  2024**

<u>**RULING ON DEFENDANT ANNINE CRYSTAL'S  MOTION FOR JUDGMENT ON
THE PLEADINGS [Doc. 24]**</u>

<u>**HAIGHT, Senior District Judge**</u>:

## I.  BACKGROUND

Plaintiffs Danielle Scarpellino, William Maisano, and Tim Chamberlain bring this action,

individually and as next friend  of their minor children,  against the Guilford Board of Education and

various officials within the Guilford Public School System.  In particular, Plaintiffs allege in their Complaint that "[t]he Guilford Board of Education has adopted a policy of discriminating against . . . the children of parents who have taken a public . . . stand against" the manner by which topics relating to systemic racism are taught in Guilford schools.  Doc. 1, ¶ 1.

Pending before the Court is the "Motion for Judgment on the Pleadings " [Doc. 24] of Defendant Annine Crystal, "Assistant Superintendent of the Guilford Public Schools," who is "sued in her individual capacity." *Id.* ¶ 12.  In that motion, Crystal requests that the Court enter judgment on the pleadings on all counts of the Complaint.  Doc. 24, at 1.  Specifically, Crystal states that the Court "must enter judgment on Counts One through Four" of the Complaint in her favor because "[P]laintiffs fail to allege facts supporting an inference that [she] violated [P]laintiffs' constitutional rights through her own individual actions." Doc. 24, at 1.  Moreover, the Court must enter judgment on Count Five  "because governmental immunity bars [P]laintiffs'  negligence claim against [her]," *id.*, and on Count Six, intentional infliction of emotional distress,  "because [P]laintiffs fail to allege facts supporting an inference that [her] conduct was extreme and outrageous," *id.*

With respect to factual allegations, Defendant Crystal emphasizes that of the 131 paragraphs in the Complaint, only four name her specifically.   Paragraph 4 states Crystal's  position as "Assistant Superintendent of the Guilford Public School" and the fact that she is sued in her "individual capacity."  Doc. 1, ¶ 4.  Paragraph 32 alleges that Plaintiffs attempted to counter the Defendants' "impos[ition] [of the] racialist agenda on Guilford Public School students" by forming a group called "No Left Turn in Education" and petitioning "the Guilford Board of Education, Defendants Freeman and *Crystal*, and the Guilford Selectman, Matt Hoey, regarding the changes being made." *Id.* ¶ 32 (emphasis added).  Paragraph 33 states that "Plaintiff Scarpellino took an

active role in the operations of the parental group, acting as the spokesman for their concerns to the Guilford Board of Education, Defendants Freeman and *Crystal*, and the Guilford First Selectman, Matt Hoey." *Id.* ¶ 33 (emphasis added).  Finally, paragraph 34 alleges:

> The parents' concerns fell on deaf ears. Instead of hearing their legitimate concerns that the Guilford Public Schools were focusing more on indoctrinating their children in a radical political doctrine that is inherently racist, Defendants Freeman and *Crystal* repeatedly misled the parents as to their intentions by claiming that they were just trying to get Guilford Public School teachers to think about social justice issues and implying that the parents were racist because they did not blindly accept the radical agenda that the Defendants were attempting to impose.

*Id.* ¶ 34 (emphasis added).

As summarized in Crystal's Memorandum in support of her "Motion for Judgment on the Pleadings," the paragraphs naming Crystal collectively allege the following facts.  Crystal is Assistant Superintendent of the Guilford Public Schools.  Doc. 24-1, at 2 (citing Doc. 1, ¶ 4).  A group of parents formed  to petition Crystal and other Defendants regarding changes being made to impose a racialist agenda.  *Id.* (citing Doc. 1, ¶ 32).  Plaintiff Scarpellino acted as "spokesman" for the group's concerns, bringing them to Defendants, including Crystal.  *Id.* at 2-3 (citing Doc. 1, ¶ 33).  Finally, Crystal told a group of parents, including Plaintiffs, that Guilford Public Schools were "trying to get Guilford Public School teachers to think about social justice issues" and "impl[ied] that the parents were racist" because they did not accept the Defendants' racial agenda.  *Id.* at 3 (citing Doc. 1, ¶ 34). " There is no allegation that Crystal interacted in any way with any of the student plaintiffs." *Id.*

Plaintiffs have not responded to Crystal's current motion, and thus have filed no opposition

to it.[1]  Examining all well-pled factual allegations and the applicable law, the Court herein resolves

Crystal's motion for judgment on the pleadings.

## II.  <u>STANDARD OF LAW -  JUDGMENT ON THE PLEADINGS</u>

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed –but

early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P.

12(c). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to

that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lively v. WAFRA Inv. Advisory*

*Grp., Inc.,* 6 F.4th 293, 301 (2d Cir. 2021)(quoting  *Lynch v. City of New York,* 952 F.3d 67, 75 (2d

Cir. 2020)).  *See also  Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) ( In deciding a motion

for judgment on the pleadings, a district court must "employ[ ] the same standard applicable to

dismissals pursuant to Fed. R. Civ. P. 12(b)(6).")  (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d

Cir. 2009) (*per curiam*))*;  DeMuria v. Hawkes*, 328 F.3d 704, 706 n. 1 (2d Cir. 2003) ("[T]he legal

standards for review of motions pursuant to Rule 12(b)(6) and Rule 12(c) are indistinguishable.").

The Court must "accept all factual allegations in the complaint as true and draw all

reasonable inferences in [the plaintiffs'] favor." *Hayden*, 594 F.3d at 160.  "To survive a Rule 12(c)

motion [for judgment on the pleadings], [a plaintiff's] complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting

*Johnson,* 569 F.3d at 43-44 and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The "issue is not

---

[1]  Pursuant to this District's Local Civil Rule 7, "all opposition memoranda shall be filed within twenty-one (21) days of the filing of the motion . . . ." D. Conn. L. Civ. R. 7(a)2.  Moreover, "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleadings provide sufficient grounds to deny the motion." *Id.* The period during which Plaintiffs were allowed to respond to Crystal's motion has long since expired.

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) (citation omitted).

"In determining a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), 'the court may consider any of the pleadings, including the complaint, the answer, and any written instruments attached to them.'" *United States v. Adams*, No. 3:21-CV-01140 (VAB), 2023 WL 8292587, at *2 (D. Conn. Dec. 1, 2023) (quoting 2 Moore's Federal Practice 3D § 12.38 (2016) and citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). In resolving a motion under either Rule 12(b)(6) or 12(c), the court employs a "two-pronged approach" to evaluate the complaint's sufficiency. *Hayden*, 594 F.3d at 161. "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Then "[a]t the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

With respect to plausibility, the " standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

## III. DISCUSSION

### A. Counts One to Four: Violations of the First and Fourteenth Amendments

In the case at bar, Defendant Crystal alleges that the Court must enter judgment on the

pleadings in her favor on Counts One to Four because Plaintiffs have failed to allege facts supporting

an inference that she violated their constitutional rights through her own individual actions.  Doc.

24, at 1.   Examining each Count separately, Plaintiffs allege in Count One "retaliation in violation

of the First Amendment," in Count Two, "compelled speech in violation of the First Amendment,"

in Count Three, "religious discrimination in violation of the First Amendment," and in Count Four,

"discrimination in violation of the Fourteenth Amendment's Equal Protection Clause." Doc. 1, at

20-26.

### 1. Count One: Retaliation in Violation of the First Amendment

"To plead a First Amendment retaliation claim" under 42 U.S.C. § 1983 against a

government official such as Crystal , "a plaintiff must show: (1) he has a right protected by the First

Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of

that right; and (3) the defendant's actions caused him some injury."[2] *Dorsett v. Cnty. of Nassau*, 732

F.3d 157, 160 (2d Cir. 2013) (citing *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir.2001)).

*See also   Kerman v. City of New York*, 261 F.3d 229, 241–42 (2d Cir. 2001) (To state a First

Amendment retaliation claim, a plaintiff must allege that  "(i) he has an interest protected by the First

Amendment, (ii) the defendants' actions were motivated by or substantially caused by the plaintiff's

exercise of that right and (iii) the defendants' actions chilled the exercise of those rights.") (citing

---

[2]  In their "Jurisdiction" allegations, Plaintiffs cite  42 U.S.C. § 1983, which is the federal
statute under which plaintiffs may sue state officers for violation of their civil rights. Specifically,
Section 1983 provides for an action at law against a "person who, under color of any statute,
ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen
of the United States ... to the deprivation of any rights, privileges, or immunities secured by the
Constitution and laws . . . ." 42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive
rights'"; instead, it "merely provides 'a method for vindicating federal rights elsewhere conferred
. . . .'" *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir.2004) (quoting *Baker v. McCollan*,
443 U.S. 137, 144 n. 3 (1979)).

*Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir.1998)).

With respect to injury, "[a] plaintiff has standing if he can show *either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm." *Dorsett*, 732 F.3d at 160 (emphasis in original).  Therefore, "[v]arious non-speech related harms are sufficient to give a plaintiff standing." *Id.* (collecting cases).

### 2.  Count Two: Compelled Speech in Violation of the First Amendment

"[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (emphasis omitted).  The Supreme Court has thus consistently "prohibit[ed] the government from telling people what they must say." *Antonyuk v. Hochul,* 639 F. Supp. 3d 232, 344 (N.D.N.Y. 2022)[3] (discussing *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 642 (1943)  and citing *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 61 (2006)).

"Generally, to prevail on a compelled-speech claim under the First Amendment, a plaintiff must prove three elements: (1) speech, (2) to which the speaker objects or disagrees, (3) which is compelled by governmental action that is regulatory, proscriptive, or compulsory in nature." *Antonyuk,* 639 F. Supp. 3d at 344 (citing *Wooley v. Maynard*, 430 U.S. 705, 714-15 (1977)).

### 3.  Counts Three and Four: Discrimination Claims

In Counts Three and Four, Plaintiffs allege discrimination.  Count Three alleges "religious

---

[3]  *Reconsideration denied sub nom. Antonyuk v. Nigrelli*, No. 1:22-CV-0986 (GTS/CFH), 2022 WL 19001454 (N.D.N.Y. Dec. 13, 2022), and *aff'd in part, vacated in part, remanded sub nom. Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023).

discrimination in violation of the First Amendment;" and  Count Four alleges "discrimination in violation of the Fourteenth Amendment's Equal Protection Clause." Doc. 1, at 20-26.

Regarding Count Three, "[t]he Free Exercise Clause of the First Amendment, applied against the states by incorporation into the Fourteenth Amendment provides that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof.'" *Cent. Rabbinical Cong. of U.S. & Canada v. New York City Dep't of Health & Mental Hygiene,* 763 F.3d 183, 193 (2d Cir. 2014) (internal citations omitted) (quoting  U.S. Const. amend. I).  The First Amendment thus prohibits all "governmental regulation of religious beliefs as such." *Cent. Rabbinical Cong.,* 763 F.3d at 193  (quoting *Sherbert v. Verner,* 374 U.S. 398, 402 (1963)). "Further, the government may not compel affirmation of religious belief, punish the expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side in controversies over religious authority or dogma." *Id.* (internal citations omitted).

With respect to the Fourteenth Amendment, "[t]he Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe,* 457 U.S. 202, 216 (1982)). *See also* U.S. Const. amend. XIV.

To make out a cognizable violation of rights under the Fourteenth Amendment's Equal Protection Clause, one must prove either a selective enforcement or invidious discrimination claim. "A selective enforcement claim generally has two elements: (1) the plaintiff, compared with others similarly situated, was selectively treated; and (2) such selective treatment was based on

impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *P.C. v. Connecticut Dep't of Child. & Fams.*, 662 F. Supp. 2d 218, 235 (D. Conn. 2009) (citing *LaTrieste Restaurant & Cabaret v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir.1994)). *See also Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000). "However, a plaintiff not alleging invidious discrimination on the basis of membership in some group may nevertheless prevail on an equal protection claim if she shows: (1) she has been intentionally treated differently from others similarly situated; and (2) there is no rational basis for the difference in treatment." *P.C.*, 662 F. Supp. 2d at 235 (citing *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). This second type of claim is often referred to as a 'class of one' equal protection claim. *Willowbrook*, 58 U.S. at 564.

### 4. Analysis

In the case at bar, to plead a constitutional violation against Defendant Crystal, Plaintiffs must "directly plead and prove" that she, as a government official, through her "own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020). As the Second Circuit clarified in *Tangreti*, "[f]ollowing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), courts may not apply a special rule for supervisory liability[;] [r]ather, the plaintiff must directly plead and prove that 'each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " 983 F.3d at 612 (lateral citations omitted) (quoting *Iqbal*, 556 U.S. at 676) . "The focus is on what the *supervisor* did or caused to be done, 'the resulting injury attributable to his conduct, and the *mens rea* required of him to be held liable, which can be no less than the *mens rea* required of anyone else.'" *Id.* at 618 (emphasis in original) (citation omitted).

In Counts One to Four, Plaintiffs have alleged that Defendant Crystal infringed on their

rights, as well as those of their minor children, in violation of the First and Fourteenth Amendments. However, Plaintiffs have failed to specify any particular conduct by Crystal which gave rise to a constitutional injury.   In simply naming Crystal's position as Assistant Superintendent of Guilford Public Schools and mentioning that she was attempting to "get Guilford Public School  teachers to think about social justice issues," Doc. 1, ¶¶ 3, 34, Plaintiffs failed to establish any elements of their federal constitutional claims.

Furthermore, conclusory references to Crystal's participation with the Guilford Board of Education in Paragraphs 33 and 34 of the Complaint fail to remedy the lack of alleged individual actions by Crystal.  "[C]omplaints containing only 'conclusory,' 'vague' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed." *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977). *See also Akande v. Schneider*, No. 3:19-CV-00937 (JAM), 2019 WL 5213293, at *2  (D. Conn. Oct. 16, 2019)  (holding allegations of conspiracy were "wholly conclusory and insufficient to sustain plausible grounds for relief"). "Diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ostrer*, 567 F.2d at 553.

In the present case, with respect to the first four Counts, Plaintiffs have failed to provide "well-pleaded factual allegations," which if  assumed to be true, would  "plausibly give rise to an entitlement to relief" against Crystal.  *See Iqbal*, 556  U.S. at 679.  Under these circumstances, the Court will enter judgment on the pleadings for Defendant Crystal as to Counts One through Four.

**B. Count Five: Common Law Negligence**

In Count Five, Plaintiffs generally allege that the "Defendants had a legal duty to protect the Plaintiffs' children from physical harm while their children were in the Defendants' custody." Doc.

1, ¶ 124.  Plaintiffs further state that the Defendants "breached that duty repeatedly by permitting the Plaintiffs' children to be physically assaulted in front of their staff without intervention," thereby causing "injury to the Plaintiffs' children." *Id.* ¶¶ 125-26.

With respect to this negligence claim, in her motion for judgment on the pleadings, Crystal argues that she has "governmental immunity." Doc. 24-1, at 8.  Specifically, she asserts that Plaintiffs have failed to allege "facts supporting an inference that [she] violated a ministerial duty, or that it was apparent to [her] that her conduct was likely to cause imminent harm to specific plaintiffs." *Id.*

When a plaintiff sues  a town official or employee in an individual capacity, that official or employee "is liable for the misperformance of a ministerial act, but has qualified immunity in the performance of governmental acts." *Daley v. Kashmanian*, 344 Conn. 464, 479 (2022) (citation omitted). "Governmental acts are performed  wholly for the direct benefit of the public and are supervisory or discretionary in nature." *Id.* (citation omitted). "The hallmark of a discretionary act is that it requires the exercise of judgment." *Id.* (citation omitted).  "In contrast, [a ministerial act] refers to a duty [that] is to be performed in a prescribed manner without the exercise of judgment or discretion." *Id.* (brackets in original).

As the Connecticut Supreme Court has explained, "when an official has a general duty to perform a certain act, but there is no city charter provision, ordinance, regulation, rule, policy, or any other directive requiring the government official to act in a prescribed manner, the duty is deemed discretionary." *Daley*, 344  Conn. at 480 (citation and brackets omitted). "In accordance with these principles, our courts consistently have held that to demonstrate the existence of a ministerial duty on the part of a municipality and its agents, a plaintiff ordinarily must point to some statute, city

charter provision, ordinance, regulation, rule, policy, or other directive that, by its clear language, compels a municipal employee to act in a prescribed manner, without the exercise of judgment or discretion." *Id.* (citation omitted).

In the case at bar, Plaintiffs allege no breach of a ministerial duty by Crystal. Rather, their action is based on a failure of discretion. That finding follows because under Connecticut state law, "[i]t is readily apparent that the supervision in school requires the exercise of discretion, as many decisions have recognized." *Austin v. Greater Hartford Academy of the Arts*, No. HHD-CV15-6058258-S, 2016 WL 4497660, at *2 (Conn. Super. July 19, 2016) (collecting cases); *see also Doe v. Bd. of Educ. of the City of New Haven*, 76 Conn. App. 296, 297–300 (2003) (holding that governmental immunity barred negligence claim based on failure to protect student from sexual assaults by other students).

As to discretion regarding safe settings in school, a Connecticut court in *Austin* explained:

> It is true that each local or regional board of education has a duty, under General Statutes § 10-220(a)(4), to provide a "safe school setting." Nevertheless, the implementation of this statutory directive necessarily requires the exercise of judgment by school boards and their employees. The plaintiffs have not pointed to any policy or directive that prescribes the manner in which the academy was required to provide such a safe setting. *See Strycharz v. Cady*, [Superior Court, Judicial District of New London, Docket No. CV-09-5013484 (November 7, 2013, Devine, *J.*)]. This court concludes, as others have done, that the duty at issue was discretionary.

> At common law, municipal employees have been afforded a qualified immunity for acts requiring the exercise of judgment and discretion. "Municipal officials are immune from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society." (Footnote omitted; internal quotation marks omitted.) *Coley v. Hartford*, 312 Conn. 150, 161, 95 A.3d 480 (2014). Discretionary act immunity "reflects a value judgment that despite injury to a member of the public—the broader interest in having government officials and employees free to exercise judgment and discretion in their official

functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury." (Internal quotation marks omitted.)

2016 WL 4497660, at *2.

Recently, in this federal District, in *Doe v. Norwalk Bd. of Educ.*, No. 3:21CV0290 (JBA), 2023 WL 1353436, at *5 (D. Conn. Jan. 31, 2023), defendants –former Norwalk High School Principal John Ramos and the Norwalk Board of Education–successfully moved for summary judgment on Count Three of the Plaintiff's complaint (negligence under Conn. Gen. Stat. § 52-557n.). The Court  held that, with respect to Ramos,  "there [were]  no ministerial duties that would abrogate governmental immunity" because "extensive and near-unanimous precedent in Connecticut clearly demonstrates that . . . the failure to . . . supervise, control and discipline," such as Plaintiff alleges, "are discretionary acts as a matter of law."   *Id.* (quoting *Hughes v. City of Hartford*, 96 F. Supp. 2d 114, 120 (D. Conn. 2000)).  *See also, e.g., Schwartz v. Palmer*, No. LLICV195011468S, 2020 WL 2520631, at *5 (Conn. Super. Ct. Apr. 27, 2020) (finding that the "supervision of students, implementation of school policies and the control and management of a school and its students" were all discretionary duties).

In *Doe*, Plaintiff responded that governmental immunity was not, however, "fatal to her claim because she was an 'identifiable victim subject to imminent harm,' which is also an 'exception to the discretionary act immunity claimed by the defense.'" *Doe*, 2023 WL 1353436, at *5 (quoting Plaintiff's Opp. Brief , at 11).  She argued that, based on her mother's complaint to the school, a jury could have reasonably found that Norwalk High School officials had a clear and unequivocal duty to act to protect her from sexual exploitation by her English teacher, defendant Krieger.  *Id.*  In response, Defendants argued that the "known information" in the case was "insufficient to create a

duty such that the Defendants had an unequivocal duty to act," because it showed no danger was "imminent." *Id.* (quoting Def.'s Reply, at 22.)

The "identifiable person-imminent harm exception" to governmental immunity "has three requirements: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm.*" Haynes v. City of Middletown*, 314 Conn. 303, 313 (2014). *See also Kusy v. City of Norwich*, 192 Conn. App. 171, 183 (2019) (same). "All three must be proven in order for the exception to apply." *Id.* In addition, with respect to schoolchildren who are on school grounds, such as the minor Plaintiffs in this case, such students qualify as "identifiable victims" in Connecticut. *St. Pierre v. Plainfield*, 326 Conn. 420, 436 (2017).

"[T]he proper standard for determining whether a harm was imminent is whether it was apparent to the municipal defendant that the dangerous condition was so likely to cause harm that the defendant had a clear and unequivocal duty to act immediately to prevent the harm." *Haynes*, 314 Conn. at 322–23. To determine whether the harm is apparent, the test applied "is an objective one" in which rather than examining the record on "actual knowledge," the court must assess "whether the circumstances would have made it apparent to a reasonable school official that harm was imminent." *Doe v. Torrington Bd. of Educ.*, No. 3: 15-CV-00452 (MPS), 2017 WL 3392734, at *8 (D. Conn. Aug. 7, 2017). The harm "must not be latent or otherwise undiscoverable by a reasonably objective person in the position and with the knowledge of the defendant." *McCarroll v. East Haven*, 180 Conn. App. 515, 524 (2018).

Furthermore, to determine whether the harm was "apparent" to the defendant, the court applies an objective test, considering only the "information available to the government agent at the

time of her discretionary act or omission." *Edgerton v. Town of Clinton*, 311 Conn. 217, 231 (2014). The court "do[es] not consider what the government agent could have discovered after engaging in additional inquiry," because "[i]mposing such a requirement on government officials would run counter to the policy goal underlying all discretionary act immunity, that is, keeping public officials unafraid to exercise judgment." *Id.* at 231–32 (citations and internal quotation marks omitted).

Here, as in the *Doe* case, Plaintiffs have not demonstrated that the harm to the students at issue was imminent. To establish imminence, there must be some indication that there is an immediate, actionable risk of "harm that the school or its proxies are obligated to prevent." *Doe*, 2023 WL 1353436, at *5. "Courts have found 'imminent harm only in the clearest cases,' and the facts Plaintiff presents fail to meet that high bar." *Id.* at *6 (quoting *Cotto v. Bd. of Educ. of City of New Haven*, 294 Conn. 265, 276 (2009)).

In the case at bar, Plaintiffs have failed to "plead facts supporting an inference that it was "apparent" to Defendant Crystal that "her conduct [was] likely to subject" specific identifiable students to "imminent harm." *See Doe v. Wilton Bd. of Educ.*, No. FST-CV20-5023769-S, 2022 WL 15281221, at *2 (Conn. Super. Oct. 14, 2022). Absent such well-plead facts, Plaintiffs have failed to establish an exception to Crystal's discretionary act immunity. The Court will enter judgment in favor of Crystal on Count Five.

## C.  Count Six: Intentional Infliction of Emotional Distress

"To make out a common law claim for intentional infliction of emotional distress in Connecticut, a plaintiff must show: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's

distress and (4) that the emotional distress sustained by the plaintiff was severe." *Aldrich v. Town of Bloomfield*, No. 3:17-CV-00581 (VLB), 2018 WL 1015337, at *6 (D. Conn. Feb. 22, 2018) (citing *Rivera v. Thurston Foods, Inc.*, 933 F. Supp. 2d 330, 343 (D. Conn. 2013)).  Given that the conduct must be "extreme and outrageous," this standard "requires conduct that exceeds all bounds usually tolerated by decent society." *Appleton v. Board of Educ. Of the Town of Stonington*, 254 Conn. 205, 210-11 (2000). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 211.

It is well settled in Connecticut that "[w]hether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." *Perez-Dickson v. City of Bridgeport, et al.*, 304 Conn. 483, 527 (2012)  (quoting *Appleton*, 254 Conn. at 210).

In the present case, Plaintiffs' limited allegations against Defendant Crystal fail to establish conduct which is "extreme and outrageous." *See, e.g., Aldrich*, 2018 WL 1015337, at *6.  Plaintiffs' Complaint simply alleges that Crystal served as an Assistant Superintendent of the Guilford Public Schools at the relevant times, participated with a group of school administrators who received unspecified information from Plaintiff Scarpellino,  and told a group of parents that Guilford Public Schools were encouraging teachers to "think about social justice issues." Doc. 1, ¶¶ 12, 33–34. Where none of those facts rise to the level of "extreme and outrageous" conduct, the Court will enter judgment in favor of Defendant Crystal on Count Six.

## IV.  CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant Annine Crystal's " Motion

for Judgment on the Pleadings" [Doc. 24].  Accordingly, pursuant to Federal Rule 12(c) of Civil

Procedure, JUDGMENT is hereby entered in favor of Defendant Crystal on all Counts – *i.e.*, Counts

One through Six– of the Complaint.

It is SO ORDERED.

Signed: New Haven, Connecticut
            March 14, 2024

*/s /Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge