## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

DANIELLE SCARPELLINO, Individually
and as Next Friend of minor child JOHN DOE
SCARPELLINO; MEA SCARPELLINO;
WILLIAM MAISANO, Individually and as
Next Friend of minor child JANE DOE
MAISANO and GAGE MAISANO; TIM
CHAMBERLAIN, Individually and as Next
Friend of minor child JOHN DOE
CHAMBERLAIN; and ELIZA
CHAMBERLAIN LINDSAY,

    *Plaintiff(s)*,
      v.

PAUL FREEMAN; JAMES PAPPA; E.
MICHAEL REGAN; GIANCARLO
MORENO; KATHLEEN BALESTRACCI;
KARA DAVIS; BRUCE SUMNER; AND
THE GUILFORD BOARD OF EDUCATION,
    *Defendant(s)*.

No. 3:22-cv-1130 (VAB)

### RULING AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Danielle Scarpellino, bringing claims individually and as next friend of her son, John Doe

Scarpellino, William Maisano and Mea Scarpellino, bringing claims individually and as next

friends of Jane Doe Maisano and Gage Maisano, and Tim Chamberlain and Eliza Chamberlain

Lindsay, bringing claims individually and as next friends of John Doe Chamberlain (collectively

the "Plaintiffs") have sued E. Michael Regan, Paul Freeman, James Pappa, Giancarlo Moreno,

Kathleen Balestracci, Kara Davis, Bruce Sumner, and the Guilford Board of Education

(collectively, the "Defendants') under 42 U.S.C. § 1983, and have alleged three distinct claims

under the United States Constitution's First Amendment, one distinct claim under the

Constitution's Fourteenth Amendment. Am. Compl. ¶¶ 2–19, 99–121, ECF No. 55.

1

The Plaintiffs' federal constitutional claims involve alleged violations of their First Amendment right not to be retaliated against for protected speech, their First Amendment right not to be compelled to engage in expressive conduct, their First Amendment right not to be discriminated based on their religion under the Free Exercise Clause, and unequal treatment in violation of the Fourteenth Amendment's Equal Protection Clause. *Id.* ¶¶ 99–121. These § 1983 claims all allegedly arise from a series of student-on-student incidents, parental complaints, and school administrative responses involving the minor children of the named parent plaintiffs during their enrollment in the Guilford Public Schools, particularly at E.C. Adams Middle School. *Id.* ¶¶ 2–10, 12–14, 41–75, 81–98.

In addition to these federal constitutional claims, the Plaintiffs assert related state-law causes of action of common-law negligence and intentional infliction of emotional distress. *Id.* ¶¶ 122–130. As to their state law claims, the Plaintiffs allege that the Defendants breached duties owed to their students, failed to exercise reasonable care in supervising and responding to reported incidents, and engaged in conduct causing emotional harm. *Id.* ¶¶ 51–56, 61, 70–75, 82, 122–130.

The Defendants deny liability as to all claims and maintain that the undisputed record demonstrates, in their view,  lawful school administration, discretionary decision-making, and timely investigative and disciplinary responses, rather than conduct giving rise to constitutional violations or tort liability under Connecticut law. Defs.' Mem. in Supp. at 1–4; Regan Repl*y* at 1–2, ECF No. 72. And they have now moved for summary judgment on all of the Plaintiffs' claims. *See* Regan Mot. for Summ. J., ECF No. 58; Defs.' Mot. for Summ. J., ECF No. 65.

For the reasons set forth below, the Defendants' motions are **GRANTED.**

All of the federal claims are dismissed with prejudice.

The Court declines to exercise supplemental jurisdiction over the remaining state law claims, dismissing those claims without prejudice to being refiled in state court.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Factual Background

### 1. The Parties

During the relevant period, the individual student plaintiffs attended Guilford public schools, and the adult plaintiffs were parents of those students. Defs.' Rule 56(a)(1) Stmt., ECF No. 65-2 ¶¶ 29–31, 32–37, 50–55.

Danielle Scarpellino, individually and on behalf of her son, John Doe Scarpellino, alleges that school administrators' responses to reported incidents involving her son, including disciplinary investigations and subsequent administrative actions, as well as her communications challenging those responses, violated their asserted constitutional rights. Am. Compl. ¶¶ 18–41.

William Maisano and Mea Scarpellino, individually and on behalf of their children, Jane Doe Maisano and Gage Maisano, allege that school practices, messaging, and the administration's handling of incidents affecting their children infringed their asserted constitutional rights. Am. Compl. ¶¶ 42–55. The record reflects that incidents involving Jane Doe Maisano and Gage Maisano were addressed by school administrators and, in some instances, investigated or discussed with school personnel. Defs.' Rule 56(a)(1) Stmt., ECF No. 65-2 ¶¶ 32–37, 38–39, 41–49, 50–55.

Tim Chamberlain and Eliza Chamberlain Lindsay, individually and on behalf of their son, John Doe Chamberlain, allege that incidents involving their son at school, as well as their expressed religious and moral objections to aspects of school culture and administration, resulted in violations of their rights. Am. Compl. ¶¶ 56–61. The undisputed record reflects that the

relevant incidents involving John Doe Chamberlain occurred at school and were addressed by school administrators. Defs.' Rule 56(a)(1) Stmt., ECF No. 65-2 ¶¶ 50–57.

Taken together, Plaintiffs allege that these circumstances resulted in constitutional violations attributable to individual school officials and to the Guilford Board of Education as the governing body of the Guilford Public Schools. Am. Compl. ¶¶ 1–4, 86–113.

During the relevant period, Michael Regan served as a school administrator within the Guilford Public Schools system and was involved in responding to student incidents and disciplinary matters at E.C. Adams Middle School. Defs.' Rule 56(a)(1) Stmt., ECF No. 65-2 ¶¶ 38–39, 52, 57, 91–96. James Pappa, Giancarlo Moreno, Kathleen Balestracci, Kara Davis, and Bruce Sumner served in administrative or supervisory roles within the Guilford school system during the relevant period and interacted with students or parents in connection with school discipline, classroom management, or school policy. *Id*. ¶¶ 31, 38–39, 52–57, 74–76, 86–90, 113–116.

The Guilford Board of Education is the governing body responsible for establishing policy for the Guilford Public Schools, and the record reflects that individual plaintiffs had limited or no direct interaction with Board members concerning the incidents at issue. *Id*. ¶¶ 17, 49.

### 2. District Policies, LGBTQ+[1]-Related Issues, and the Genesis of the Dispute

Beginning in the spring of 2020, following the death of George Floyd, Guilford Public Schools undertook districtwide initiatives that Plaintiffs characterize as emphasizing student safety, inclusion, and nondiscrimination. Pls.' Consol. Mem. in Opp'n, ECF No. 70, at 14 (citing

---

[1] *Merriam-Webster Online Dictionary*, LGBTQ+, https://www.merriam-webster.com/dictionary/LGBTQ%2B (last visited Feb. 2, 2026) (defining "LGBTQ+" as "lesbian, gay, bisexual, transgender, queer/questioning, plus (others)").

Pls.' Local Rule 56(a)(2) Statement ¶ 214). As part of those initiatives, Pride flags and related LGBTQ+ messaging were displayed in school hallways and classrooms, and Pride-related apparel was made available to faculty. Pls.' Local Rule 56(a)(2) Statement ¶¶ 186, 191. Defendants do not dispute that such measures were implemented but argue that Plaintiffs cannot establish a causal connection between any districtwide policies or practices and the alleged constitutional injuries asserted in this case. *See* Defs.' Mem. in Supp., ECF No. 65, at 29–30.

Several Plaintiffs objected to aspects of this messaging on religious and expressive grounds, asserting that it conflicted with their sincerely held Christian beliefs concerning gender and sexuality. Pls.' Consol. Mem. in Opp'n, ECF No. 70, at 14–16. Plaintiffs further contend that they raised those objections with school administrators and district officials through various communications, including emails and meetings. *Id*. at 14–16.

Plaintiffs contend that, after raising these objections, they and their children experienced hostility, adverse treatment, or increased scrutiny from school officials. Pls.' Consol. Mem. in Opp'n, ECF No. 70, at 10–16. Defendants dispute that characterization and maintain that the actions at issue were based on student conduct, safety concerns, or routine school administration, rather than on Plaintiffs' speech or religious beliefs. Defs.' Mem. in Supp., ECF No. 65, at 7–10.

### 3. Student-Specific Incidents Involving John Doe Scarpellino

### i. December 2021 Locker-Area Incident

On December 15, 2021, Danielle Scarpellino sent an email to school officials reporting that her son, John Doe Scarpellino, had been involved in an incident with another student near the student lockers at E.C. Adams Middle School. Regan Rule 56(a)(1) Stmt. ¶ 5. In that email, she described the incident as involving physical contact that she characterized as a sexual assault. *Id*. ¶ 6.

The following day, James Pappa, acting in his capacity as assistant principal, reported the incident to the Guilford Police Department and to the Connecticut Department of Children and Families. *Id.* ¶ 7. School administrators initiated an internal response while those reports were pending. *Id.* ¶¶ 7–9.

Following an investigation, school administrators disciplined the other student involved by imposing a suspension. *Id.* ¶ 9. The Department of Children and Families later determined that the reported conduct "does not meet statutory definition of abuse/neglect/at risk." *Id.* ¶ 15. Plaintiffs do not dispute that DCF reached this conclusion, though they dispute the adequacy of the school's response. Pls.' Rule 56(a)(2) Stmt., ECF No. 70-1 ¶ 15.

### ii. Music-Class Dispute

At a later point, John Doe Scarpellino experienced a dispute involving a music class. Regan Rule 56(a)(1) Stmt. ¶ 22. In response, Regan arranged for the student to change music classes. *Id.* ¶ 23. According to Regan, there were no further reported issues following that change. *Id.* ¶ 23. Plaintiffs do not dispute that the class change occurred but maintain that it did not resolve broader concerns they had raised regarding their son's treatment. Pls.' Rule 56(a)(2) Stmt., ECF No. 70-1 ¶¶ 22–23.

### iii. Pencil-Stabbing Incident

On a separate occasion, John Doe Scarpellino was injured when another student stabbed him with a pencil. Regan Rule 56(a)(1) Stmt. ¶ 28. School administrators investigated the incident. *Id.* ¶ 29. The other student involved was disciplined and wrote a letter of apology. *Id.* ¶ 30.

During his deposition, John Doe Scarpellino testified that he was satisfied with how the pencil-stabbing incident was handled and that he did not believe it was handled differently

because of who he or his mother were. *Id.* ¶ 31. Plaintiffs do not dispute that testimony. Pls.'
Rule 56(a)(2) Stmt., ECF No. 70-1 ¶ 31.

### 4. Incidents Involving John Doe Chamberlain

John Doe Chamberlain attended E.C. Adams Middle School during Regan's tenure as
principal. Regan Rule 56(a)(1) Stmt. ¶ 51. He testified that Regan treated him fairly during his
time at the school. *Id.*

On one occasion, Chamberlain was kicked in the mouth by another student during a
school activity. *Id.* ¶ 53. School administrators investigated the incident and disciplined the other
student. *Id.* ¶ 54. Plaintiffs do not dispute that disciplinary action was taken but contend that
school supervision was inadequate. Pls.' Rule 56(a)(2) Stmt., ECF No. 70-1 ¶¶ 53–54.

Plaintiffs also identify other student-on-student interactions involving Chamberlain, some
of which occurred during recreational activities or outside of the school setting. *Id.* ¶¶ 55–61.
Defendants contend that these incidents do not reflect unconstitutional conduct by school
administrators because, where incidents were reported, school officials investigated and imposed
discipline, and because several of the interactions identified by Plaintiffs did not occur in
circumstances subject to school supervision. Regan Rule 56(a)(1) Stmt. ¶¶ 53–54; Pls.' Rule
56(a)(2) Stmt., ECF No. 70-1 ¶¶ 53–54, 55–61.

### B. Procedural History

On September 7, 2022, Plaintiffs filed this lawsuit. Compl., ECF No. 1.

On November 22, 2022, notices of appearance were filed on behalf of E. Michael Regan
and former Defendant Annine Crystal, and separately on behalf of Paul Freeman, James Pappa,
Giancarlo Moreno, Kathleen Balestracci, Kara Davis, Bruce Sumner, and the Guilford Board of
Education. Not. of Appearance, ECF Nos. 8–9, 12–13.

On December 15, 2022, E. Michael Regan, former Defendant Annine Crystal, and Paul Freeman, James Pappa, Giancarlo Moreno, Kathleen Balestracci, Kara Davis, Bruce Sumner, and the Guilford Board of Education each filed Answers to the Complaint. Answer, ECF Nos. 14–16.

On March 9, 2023, the Court entered an initial scheduling order. Scheduling Order, ECF No. 20. The scheduling deadlines were subsequently modified multiple times by consent of the parties. *See* Order, ECF No. 27 (Jan. 9, 2024); Order, ECF No. 48 (Mar. 4, 2025); Scheduling Order, ECF No. 52 (May 27, 2025).

On March 14, 2024, U.S. District Judge Charles S. Haight, Jr. granted a motion for judgment on the pleadings for Annine Crystal, a former Defendant, and entered judgment in her favor on all counts. Ruling, ECF No. 28.

On March 25, 2025, Judge Haight denied as moot Defendants' motion to dismiss. Ruling, ECF No. 49.

On May 1, 2025, the case was reassigned to this Court. Order of Transfer, ECF No. 50.

On August 4, 2025, the Plaintiffs filed a consent motion to amend the Complaint. Consent Mot. to Amend/Correct, ECF No. 53.

On August 5, 2025, the Court granted the consent motion and directed Plaintiffs to file the Amended Complaint by August 8, 2025. Order, ECF No. 54.

On August 5, 2025, the Plaintiffs filed the Amended Complaint. Am. Compl., ECF No. 55.

On August 28, 2025, E. Michael Regan filed a motion for summary judgment together with a supporting memorandum of law and a Local Rule 56(a)(1) statement. Mot. for Summ. J., ECF No. 58; Mem. in Supp., ECF No. 59; Rule 56(a)(1) Stmt., ECF No. 60; *see also* Order, ECF No. 62.

On September 5, 2025, Paul Freeman, James Pappa, Giancarlo Moreno, Kathleen Balestracci, Kara Davis, Bruce Sumner, and the Guilford Board of Education filed a separate motion for summary judgment, supported by a memorandum of law and a Local Rule 56(a)(1) statement. Mot. for Summ. J., ECF No. 65; Defs.' Rule 56(a)(1) Statement, ECF No. 65-2.

On September 9, 2025, the Plaintiffs filed a consent motion to extend the deadline to respond to the pending summary judgment motions. Consent Mot. for Extension of Time, ECF No. 67.

On September 10, 2025, the Court granted the consent motion and ordered that responses to the pending motions for summary judgment, ECF Nos. 58 and 65, be filed on or before October 17, 2025. Order, ECF No. 68.

On October 17, 2025, the Plaintiffs filed a consolidated memorandum in opposition to both motions for summary judgment, together with Local Rule 56(a)(2) statements and supporting exhibits. Pls.' Consol. Mem. in Opp'n, ECF No. 70.

On October 23, 2025, E. Michael Regan filed a reply in support of his motion for summary judgment. Regan Reply, ECF No. 72.

On October 31, 2025, the remaining Defendants filed a reply in support of their motion for summary judgment. Defs.' Reply, ECF No. 74.

On October 31, 2025, the remaining Defendants also filed a motion to withdraw an earlier-filed reply and supporting exhibit due to scrivener's errors. Mot. to Withdraw Reply, ECF No. 75.

On November 3, 2025, the Court granted the motion to withdraw. Order, ECF No. 76.

On December 29, 2025, the remaining Defendants filed a joint motion to extend the deadline for filing the joint trial memorandum until after the Court rules on the pending summary judgment motions. Joint Mot. for Extension of Time, ECF No. 77.

On December 30, 2025, the Court granted the motion in part and modified the trial deadlines, ordering that the joint trial memorandum be filed within thirty (30) days after the Court rules on the pending summary judgment motions and that the case be deemed trial ready thirty (30) days after the filing of the joint trial memorandum. Order, ECF No. 78.

## II. STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of *'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'* which it believes demonstrate the absence of a genuine issue of material fact."). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for sum ary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967) and *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of New York*, 874 F.3d 338, 343, 347 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all

11

ambiguities and draw all permissible factual inferences in favor of the party against whom

summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of

material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347,

358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there

can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

## III. DISCUSSION

### A. The First Amendment Retaliation Claim

To prevail on a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff

must establish three elements: "(1) he has a right protected by the First Amendment; (2) the

defendant's actions were motivated or substantially caused by his exercise of that right; and (3)

the defendant's actions caused him some injury." *Dorsett v. County of Nassau*, 732 F.3d 157,

160 (2d Cir. 2013); *Scarpellino v. Freeman*, 2024 U.S. Dist. LEXIS 45044, at *7–*8 (D. Conn.

Mar. 14, 2024).

A First Amendment retaliation claim requires proof of an objectively cognizable injury.

Allegations of a subjective chilling effect are insufficient absent "specific present objective harm

or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972) ("Allegations of a

subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a

threat of specific future harm."); *see also Davis v. Vill. Park II Realty Co.*, 578 F.2d 461, 464 (2d

Cir. 1978) ("The mere allegation of a subjective chill is not an adequate substitute for a claim of

specific present objective harm.").

Individual liability under § 1983 also requires proof that "each Government-official

defendant, through the official's own individual actions, has violated the Constitution." *Tangreti

v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020). In addition, allegations of retaliation based on

subjective feelings of intimidation or discomfort are insufficient, absent proof of an objectively cognizable injury, because "allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972).

Michael Regan and the remaining Defendants move for summary judgment on Count One, arguing that Plaintiffs' First Amendment retaliation claims fail because Plaintiffs expressly limited the scope of those claims, failed to produce defendant-specific evidence of retaliatory motive or causation, and failed to establish an objectively cognizable injury. *See* Pls.' Consol. Mem. in Opp'n., at 10 n.3; Defs.' Reply Mem., at 1–3; Defs.' Mem. in Supp., at 7–8.

As to the remaining Plaintiffs, the Defendants argue that the record evidence does not create a genuine issue of material fact as to the Plaintiffs' retaliation claims. Michael Regan argues that his role was limited to reviewing and investigating reported student incidents and implementing disciplinary or administrative responses, rather than engaging in speech-motivated punishment. *See* Regan Rule 56(a)(1) Statement, ¶¶ 1–2, 9, 22–23, 28–31 (describing Regan's responsibilities in reviewing reported incidents and reflecting that he disciplined the other student involved in the locker-area incident by suspension).

In his view, the same record also reflects that he did not compel student speech or interrogate students regarding their political or religious beliefs. *Id*. ¶¶ 39–40, 57–60 (stating that Regan "did not confront the Plaintiffs' children publicly and interrogate them on their religious and political beliefs," "never tried to force John Doe Scarpellino to say something he did not believe," and "never forced John Doe Chamberlain to self-censor his speech or to force him to speak in a way he did not want to on political or religious issues").

As to Paul Freeman, James Pappa, Giancarlo Moreno, Kathleen Balestracci, Kara Davis, and Bruce Sumner, these Defendants argue that there is no record evidence creating a genuine issue of material fact that any of these Defendants took adverse action because of Plaintiffs' protected speech. *See* Defs.' Rule 56(a)(1) Statement, ¶¶ 7–10 (including testimony that Plaintiffs "did not have any substantive interactions" with several defendants and that John Doe Scarpellino "was not disciplined because of his or his family's political beliefs").

The Defendants argue that, as a matter of law, allegations of a subjective chilling effect do not satisfy the injury element of a First Amendment retaliation claim. *See* Defs.' Reply Mem., ECF No. 74, at 1–4; *see also* Defs.' Mem. in Supp., at 8 (stating that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm," citing *Laird*, 408 U.S. at 13–14).

The Court agrees.

Here, the Plaintiffs expressly limited the scope of their First Amendment retaliation claims. In their consolidated opposition, the Plaintiffs stated that "[s]ummary judgment on any other retaliation are not opposed." Pls.' Consol. Mem. in Opp'n, at 10 n.3. Consistent with that concession, the Plaintiffs acknowledged that Gage Maisano, Jane Doe Maisano, John Doe Chamberlain, Mea Scarpellino, and John Doe Scarpellino do not assert First Amendment retaliation claims. *See* Defs.' Reply Mem., at 1. As a result, these claims are deemed abandoned. *See Jackson v. Federal Express*, 766 F.3d 189, 195 (2nd Cir. 2014) (finding that "a partial response arguing that summary judgment should be denied as to some claims while not mentioning others," that response "may be deemed an abandonment of the unmentioned claims"); *Wood v. Maguire Auto.*, LLC, 508 F. App'x 65, 66 (2d Cir. 2013) (holding argument

waived where it appeared "in only one sentence" of the brief, making it "inadequately argued and thus waived.")(citing *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).

As to Michael Regan, the undisputed evidence shows that his actions consisted of administrative review and investigation of reported incidents, followed by disciplinary or administrative responses, and do not support an inference of retaliation motivated by protected speech. *See* Regan Rule 56(a)(1) Statement, ¶¶ 2, 9, 18–20, 35, 39–40, 57–60 (stating that Regan's involvement was limited to investigating reported incidents and implementing responses consistent with Board policy, that he did not interrogate students regarding political or religious beliefs, and that his actions did not cause students to self-censor).

As to Paul Freeman, James Pappa, Giancarlo Moreno, Kathleen Balestracci, Kara Davis, and Bruce Sumner, the record similarly does not establish that any of these Defendants took adverse action because of Plaintiffs' protected activity. *See* Defs.' Rule 56(a)(1) Statement, ¶¶ 7–10. On this record, the Plaintiffs have "admitted" to various statements that Plaintiffs were not compelled to speak, interrogated about beliefs, or disciplined because of political or religious views. *See, e.g.,* Pls.' Rule 56(a)(2) Statement, ¶¶ 4–5, 8–10 (admitting that Mea Scarpellino "never was forced to speak about religion or politics or say things that she did not believe," *Id.* ¶ 5; admitting that Mea Scarpellino "did not self-censor in the classroom," *Id.* ¶ 4; admitting that Mea Scarpellino "was not publicly confronted about her political or religious beliefs," *Id.* ¶ 9; admitting that no defendant told students it was acceptable to physically assault her, *Id.* ¶ 8; and admitting that her school assignments "were not altered," *Id.* ¶ 10).

The Plaintiffs also have failed to establish the injury element of a First Amendment retaliation claim. Allegations of discomfort, offense, or perceived hostility, without more, do not constitute an objectively cognizable injury. *Laird*, 408 U.S. at 13–14 ("Allegations of a

subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."); *Davis*, 578 F.2d at 464 ("The mere allegation of a subjective chill is not an adequate substitute for a claim of specific present objective harm."). But the Plaintiffs have not identified any record evidence showing of the individual Defendants taking action that resulted in a concrete deprivation of First Amendment rights.

As to the Guilford Board of Education, the Plaintiffs have not created a genuine issue of fact that any alleged constitutional injury was caused by an official Board policy or custom. *Legg v. Ulster County*, 979 F.3d 101 (2d Cir. 2020) (explaining that local governments "are not subject to respondeat superior under § 1983 liability" and may be held liable only if their "policy or custom . . . inflicts the injury," and that a policy "need not be formal in nature" and may be shown by acts "sufficiently widespread and persistent" or "inferred from evidence of deliberate indifference"); *Algarin v. New York City Dept. of Correction*, 460 F. Supp. 2d 469 (S.D.N.Y. 2006) (stating that, to show a policy or custom, "a plaintiff must show that the defendant's unconstitutional action was taken pursuant to a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers, or pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels"); *Watrous v. Town of Preston*, 902 F. Supp. 2d 243 (D. Conn. 2012) (explaining that a municipality "may not be held liable on a theory of respondeat superior," but "may . . . be held liable if the conduct that caused the unconstitutional deprivation was taken pursuant to: 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers(,) . . . (or) pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking

channels'"). Indeed, the Plaintiffs do not identify any Board policy, decision, or sufficiently widespread custom directing retaliatory conduct.

Accordingly, any First Amendment retaliation claims against any of the individual Defendants, as well as the Guilford Board of Education, fail as a matter of law, and will be dismissed.

### B. The First Amendment Compelled-Speech Claim

The First Amendment protects not only the right to speak freely, but also the right to refrain from speaking at all. *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (holding that the government may not require an individual to "use his private property as a 'mobile billboard' for the State's ideological message"). That protection reflects the core principle that the Constitution safeguards "the sphere of intellect and spirit" from government intrusion. *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

A compelled-speech violation, however, occurs only where government action actually compels expression. *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 96 (2d Cir. 2024) (emphasizing that a First Amendment violation arises only when "the application of the law at issue actually compels [ ] expressive conduct"); *see also C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 189 (3d Cir. 2005) ("[A] violation of the First Amendment right against compelled speech occurs only in the context of actual compulsion."). For such compulsion to occur, the governmental measure must "punish, or threaten to punish, protected speech by governmental action that is regulatory, proscriptive, or compulsory in nature." *Ridgewood Bd. of Educ.*, 430 F.3d at 189 (internal quotation marks omitted)(cited in *Boehringer Ingelheim Pharms., Inc. v. United States Dep't of Health & Hum. Servs.*, 150 F.4th 76, 95 (2d Cir. 2025)).

While compelled speech "invades the sphere of intellect and spirit which it is the purpose of the First Amendment to our Constitution to reserve from all official control," *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943), not every exposure to government-sponsored messaging constitutes compelled speech. The government must require an individual to affirm, endorse, or express a particular message, rather than merely exposed the individual to ideas with which he or she disagrees. *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 61–62 (2006).

Plaintiffs' compelled-speech claim arises from their objection to Pride-related imagery, messaging, and displays within Guilford Public Schools, which they contend conflict with their religious beliefs regarding gender and sexuality. Defs.' Mem. in Supp. at 49–50 (describing testimony that Eliza Lindsay stated the Pride flag "did not represent her" and that she "did not believe in what it symbolized"). Defendants argue that Plaintiffs cannot establish a compelled-speech violation because Plaintiffs do not allege that they or their children were required to recite statements, affirm beliefs, sign pledges, wear symbols, participate in expressive ceremonies, or otherwise verbally endorse Pride-related messages. *See* Defs.' Mem. in Supp. at 8–9, 14 (arguing, based on deposition testimony, that Plaintiffs were not required to speak about political or religious matters or affirm beliefs with which they disagreed).

Plaintiffs contend that the widespread presence of Pride-related imagery and messaging throughout the schools exerted pressure on students to conform and, in their view, amounted to compelled speech. Pls.' Consol. Mem. in Opp'n, at 14–15 (arguing that students were effectively surrounded by Pride imagery and that the extent and prevalence of such imagery presents a factual question as to compulsion).

Michael Regan argues that his involvement as principal was limited to administrative oversight, the investigation of reported student incidents, and the implementation of disciplinary or remedial measures, and that he did not require any student to speak, affirm beliefs, self-censor, or otherwise engage in expressive conduct. Regan Rule 56(a)(1) Statement, ¶¶ 35–40, 57–61 (stating that Regan did not interrogate students about their political or religious beliefs, did not attempt to force John Doe Scarpellino to say anything he did not believe, and did not require John Doe Chamberlain to self-censor or to engage in ideological speech). Regan further argues that Plaintiffs' compelled-speech claim fails as a matter of law because exposure to school-sponsored imagery or messaging, without any requirement of affirmation, participation, or endorsement, does not constitute compelled expression under the First Amendment. Regan Mem. in Supp., at 18–21.

The remaining Defendants maintain that Plaintiffs cannot establish the threshold requirement of compelled expression because the record does not show that any student was required to affirm, recite, endorse, or participate in speech with which they disagreed. *See* Pls.' Rule 56(a)(2) Statement, ¶¶ 35–40, 57–60 (admitting that neither Plaintiffs nor their children were required to recite statements, affirm beliefs, sign pledges, or submit to questioning about political or religious views). Defendants further contend, as a matter of law, that mere exposure to school-sponsored imagery or messaging, without any requirement of participation or endorsement, does not constitute compelled speech under the First Amendment. *See* Regan Mem., at 18–21; Defs.' Reply Mem. in Supp., at 4–5.

The Court agrees.

To establish a compelled-speech violation, the Plaintiffs must show that the government actually compelled them or their children to speak, affirm beliefs, or engage in expressive

conduct, rather than merely exposing them to ideas with which they disagreed. *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 61-62 (2006); (*Scarpellino v. Freeman*, 2024 U.S. Dist. LEXIS 45044, at *9 (D. Conn. Mar. 14, 2024) ("[A] plaintiff must prove: '(1) speech, (2) to which the speaker objects or disagrees, (3) which is compelled by governmental action that is regulatory, proscriptive, or compulsory in nature'"). A First Amendment violation arises only when "the application of the law at issue actually compels [ ] expressive conduct." *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 96 (2d Cir. 2024); *see Boehringer Ingelheim Pharms., Inc.*, 150 F.4th at 95 (same).

Here, Plaintiffs do not allege that any Defendant required them or their children to recite statements, affirm beliefs, sign pledges, or otherwise engage in expressive conduct endorsing Pride-related viewpoints. Pls.' Rule 56(a)(2) Stmt., ¶¶ 35–40, 57–60 (admitting that students were not compelled to speak, affirm beliefs, or interrogated regarding political or religious views). Plaintiffs' compelled-speech theory instead rests on the asserted "frequency," "volume," and "ubiquity" of Pride-related imagery and messaging within the school environment. Pls.' Consol. Mem. in Opp'n, at 14–15. Defendants argue that exposure to school-sponsored imagery or messaging, without any requirement of affirmation, participation, or endorsement, does not constitute compelled expression under the First Amendment. Regan Mem. in Supp., at 18–21; Defs.' Reply Mem., at 4–5.

As to Michael Regan, the record does not present a genuine issue of material fact as to whether he compelled student speech or interrogated students regarding their political or religious beliefs. Regan Rule 56(a)(1) Statement, ¶¶ 35–40, 57–60 (stating that Regan did not question students about their political or religious beliefs and did not require John Doe Scarpellino or John Doe Chamberlain to affirm, express, or engage in speech with which they

disagreed); Pls.' Rule 56(a)(2) Stmt., ¶¶ 35–40, 57–60 (responding "Admitted" to those statements).

Nor does the record create a genuine issue of material fact as to Paul Freeman, James Pappa, Giancarlo Moreno, Kathleen Balestracci, Kara Davis, Bruce Sumner, or the Guilford Board of Education. Defs.' Rule 56(a)(1) Statement, ¶¶ 1–10 (stating that Plaintiffs had no substantive interactions with several of the individually named defendants and that John Doe Scarpellino was not disciplined based on his or his family's political or religious beliefs); Pls.' Rule 56(a)(2) Stmt., ¶¶ 1–10 (responding "Admitted").

Finally, as to the Guilford Board of Education, the Plaintiffs also fail to identify anything in this record creating a genuine issue of material fact as to any compelled expression occurring under an official board policy or custom. *Legg\*, 979 F.3d 101 (2d Cir. 2020) (explaining that local governments "are not subject to respondeat superior under § 1983 liability" and may be held liable only if their "policy or custom . . . inflicts the injury"). Indeed, Plaintiffs do not identify any Board-adopted policy, regulation, or decision requiring students to engage in compelled expression, and they do not provide evidence of a widespread and persistent Board custom.

While Plaintiffs argue that mere exposure to Pride-related imagery created pressure for their children to conform, compelled speech occurs only when the government "requires affirmation of a belief and an attitude of mind." *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943); *see also Wooley v. Maynard*, 430 U.S. 705, 714 (1977)(invalidating a law that required an individual to "participate in the dissemination of an ideological message by displaying it on his private property."). The doctrine thus turns on whether the challenged action "*actually compels*  [ ] expressive conduct," *Boehringer Ingelheim Pharms., Inc.*, 150 F.4th at 95

(citation and internal quotation marks omitted) (emphasis in original), not on subjective feelings of pressure or disagreement with government-favored ideas. *See id.* at 96 (Because Boheringer's assent to the Manufacturer Agreement did not occur in the context of actual compulsion, the company suffered no First Amendment violation.")(citation omitted). And the Plaintiffs have identified no such forced expression here.

As a result, because the Plaintiffs must "come forward with specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and have not done so, there is no genuine issue of material fact as to their compelled speech clam to be tried.

Accordingly, the Plaintiffs' First Amendment compelled-speech claim against both the individual Defendants and the Guilford Board of Education will be dismissed.

## C. The First Amendment Free Exercise of Religion Claim

The Free Exercise Clause of the First Amendment, as incorporated against the states through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I; *Cent. Rabbinical Cong. of U.S. & Can. v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014) (quoting U.S. Const. amend. I).

This Clause prohibits governmental action that targets religious belief or practice for adverse treatment. *Cent. Rabbinical Cong.*, 763 F.3d at 193 (quoting *Sherbert v. Verner*, 374 U.S. 398, 402 (1963)) (explaining that the Free Exercise Clause bars "governmental regulation of religious beliefs as such"). Government actors may not "compel affirmation of religious belief, punish the expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side in controversies over religious authority or dogma." *Cent. Rabbinical Cong.*, 763 F.3d at 193.

The Free Exercise Clause further requires religious neutrality and bars even "subtle departures from neutrality on matters of religion." *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 584 U.S. 617, 638 (2018) (stating that "[t]he Free Exercise Clause bars even subtle departures from neutrality"). Consistent with that principle, this Clause protects religious observers against unequal treatment and subjects to the "strictest scrutiny" laws that "target the religious for special disabilities based on their religious status." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 457 (2017) (stating that the Clause "protects religious observers against unequal treatment" and prohibits "special disabilities based on their religious status").

Where a plaintiff contends that an ostensibly neutral policy discriminates against religion in practice, courts may examine the "totality of evidence," including "contemporaneous statements made by members of [the] decisionmaking body," and assess whether the policy reflects "subtle departures from neutrality" or "covert suppression" of religious belief. *New Hope Fam. Servs., Inc. v. Poole*, 966 F.3d 145, 165 (2d Cir. 2020) (explaining that courts must "survey[] meticulously" the evidence and consider the policy's "real operation").

Likewise, government actors are "obliged under the Free Exercise Clause to proceed in a manner neutral toward and tolerant of religious beliefs," and neutrality is not satisfied where the government "fails to act neutrally by proceeding in a manner intolerant of religious beliefs or restricting practices because of their religious nature." *Mid Vt. Christian Sch. v. Saunders*, 151 F.4th 86, 101 (2d Cir. 2025).

Plaintiffs' Free Exercise claims arise from their contention that students expressed sincerely held Christian beliefs regarding gender and sexuality and that Guilford Public Schools' Pride-related messaging, together with school officials' responses to student disputes, burdened

those religious beliefs. *See* Pls.' Consol. Mem. in Opp'n, at 15–16 (asserting that Pride-related messaging and school responses conveyed hostility toward Christian beliefs and rendered students "unwelcome" within the school environment). Plaintiffs maintain that the presence of Pride displays and related statements attributed to school officials created an environment that was incompatible with their religious convictions. *Id.* at 15. Defendants dispute that characterization and contend that the challenged conduct reflects the school district's efforts to promote diversity, equity, and inclusion, rather than any burden on Plaintiffs' religious exercise. *See* Defs.' Reply Mem., at 5.

In response, Defendants argue that Plaintiffs' Free Exercise claims fail because the record does not establish that any Plaintiff was subjected to differential treatment on the basis of religion or that any Defendant imposed a cognizable burden on religious exercise. *See* Regan Mem. in Supp., at 22–24 (arguing that Plaintiffs have not identified conduct directed at religious belief or practice and that the challenged actions reflect neutral school administration rather than religious discrimination). Plaintiffs, for their part, expressly narrowed the religious-discrimination theories they continued to oppose at summary judgment, stating that "[s]ummary judgment is not opposed on any other religious discrimination claim not mentioned in this section." Pls.' Consol. Mem., at 15 n.5.

Defendants contend that Plaintiffs have not adduced record evidence showing that any Defendant punished religious belief, restricted religious practice, or otherwise imposed a cognizable burden on Plaintiffs' free exercise of religion. *See* Defs.' Reply Mem., at 5–6 (arguing that Plaintiffs "present no evidence that any defendant punished religious belief or restricted religious practice"). Plaintiffs, by contrast, assert that Pride-related messaging and statements

attributed to school officials conveyed that students with dissenting religious views were "not welcome" within the school environment. *See* Pls.' Consol. Mem. in Opp'n, at 15–16.

Michael Regan separately argues that Plaintiffs have not identified any action by him that restricted religious exercise, compelled religious affirmation, or punished religious belief. *See* Regan Mem. in Supp., at 11–13 (arguing that the summary-judgment record shows no compelled speech, no disparate treatment based on religion, and no discipline motivated by Plaintiffs' religious beliefs).

The Court agrees.

At summary judgment, claims may be deemed abandoned where a plaintiff expressly disclaims opposition to particular theories or fails to develop defendant-specific argument in response to a properly supported motion. *Wood v. Maguire Auto., LLC*, 508 F. App'x 65, 66 (2d Cir. 2013) (holding that an argument appearing "in only one sentence of [a party's] brief" was "inadequately argued and thus waived")(citing *Norton*, 145 F.3d at 117); *Jackson v. Federal Express*, 766 F.3d 189, 195 (2nd Cir. 2014) (finding that "a partial response arguing that summary judgment should be denied as to some claims while not mentioning others," that response "may be deemed an abandonment of the unmentioned claims")

Here, Plaintiffs expressly limited the religious-discrimination theories they continued to oppose. Pls.' Consol. Mem. in Opp'n, at 15 n.5 (stating that "[s]ummary judgment is not opposed on any other religious discrimination claim not mentioned in this section"). Plaintiffs' Free Exercise discussion does not identify Michael Regan or the remaining Defendants as having punished religious belief, restricted religious practice, or imposed disabilities based on religious status. *See* Pls.' Consol. Mem. in Opp'n to Defs.' Mots. for Summ. J., ECF No. 70, at 15–16. The

25

Court therefore considers only those Free Exercise Clause theories that Plaintiffs preserved and developed in their summary-judgment briefing.

But, even as preserved, the Plaintiffs' Free Exercise Clause claims fail as a matter of law. They must create a genuine issue of material fact that governmental actors targeted religion, burdened religious exercise, punished religious belief, or imposed special disabilities based on religious status. *See Cent. Rabbinical Cong.*, 763 F.3d at 193 (holding that Government actors may not "compel affirmation of religious belief, punish the expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side in controversies over religious authority or dogma.").

Here, Plaintiffs do not identify record evidence demonstrating that any Defendant prohibited religious expression, disciplined students for religious beliefs, compelled students to affirm beliefs contrary to their religion, or imposed special disabilities based on religious status. *See* Pls.' Rule 56(a)(2) Statement, ECF No. 70-1 ¶¶ 35–40, 57–60; Regan Rule 56(a)(1) Statement, ECF No. 60 ¶¶ 1–2, 9, 22–23, 28–31; Defs.' Rule 56(a)(1) Statement, ECF No. 65-2 ¶¶ 1–10. As to Michael Regan, it is undisputed that he did not interrogate students about religious beliefs and did not discipline students on the basis of religion. *See* Regan Rule 56(a)(1) Stmt., ¶¶ 35–40, 57–62; Pls.' Rule 56(a)(2) Stmt., ¶¶ 35–40, 57–62 (responding "Admitted").

As to Paul Freeman, James Pappa, Giancarlo Moreno, Kathleen Balestracci, Kara Davis, Bruce Sumner, and the Guilford Board of Education, the record likewise does not support Plaintiffs' Free Exercise Clause claim. *See* Defs.' Rule 56(a)(1) Stmt., ECF No. 65-2 ¶¶ 1–10; Pls.' Rule 56(a)(2) Stmt., ECF No. 70-1 ¶¶ 1–10 (admitting that Plaintiffs had no substantive interactions with several defendants and were not disciplined based on religious beliefs).

Finally, as to the Guilford Board of Education, the record contains no evidence of a Board policy or decision targeting religious belief or practice, much less a persistent Board custom that "inflicts the injury." *See Legg*, 979 F.3d at 101 (recognizing that local governments may be held liable only if their "policy or custom . . . inflicts the injury," and that a policy may be shown by acts "sufficiently widespread and persistent" or "inferred from evidence of deliberate indifference").

As a result, because the Plaintiffs must "come forward with specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 323, and they have failed to do so, their Free Exercise Clause claim should be dismissed as a matter of law.

Accordingly, the Plaintiffs' Free Exercise Clause claim will be dismissed.

### D. The Fourteenth Amendment Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Under 42 U.S.C. § 1983, a plaintiff asserting an equal protection claim must show "(1) that [the plaintiff was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001); *see also Giaccio v. City of New York*, 502 F. Supp. 2d 380, 387 (S.D.N.Y. 2007), aff'd, 308 F. App'x

470 (2d Cir. 2009). Where, as here, plaintiffs proceed under a selective-treatment or class-of-one theory, they bear a demanding burden and must identify comparators who are "similarly situated in all material respects." *Doe v. Salina*, 2024 WL 5077629, at *11 (E.D.N.Y. Dec. 11, 2024); *Scanlon v. Town of Greenwich*, 605 F. Supp. 3d 344, 356 (D. Conn. 2022).

Plaintiffs' Equal Protection theories arise from their assertion that certain students were treated differently by school officials in connection with discipline, classroom management, and responses to student conduct. *See* Pls.' Consol. Mem. in Opp'n., at 16–17. Defendants note that Plaintiffs have expressly narrowed their Equal Protection claims, conceding that Danielle Scarpellino, William Maisano, Gage Maisano, Jane Doe Maisano, Timothy Chamberlain, Eliza Chamberlain Lindsay, and John Doe Chamberlain do not assert Equal Protection claims against any defendant. *See* Defs.' Reply Mem. in Supp., at 7. The only remaining Equal Protection claims concern John Doe Scarpellino and Mea Scarpellino, and only as to specific school officials. *Id.*

Defendants argue that the remaining Equal Protection claims fail on the summary-judgment record. *See* Defs.' Mem. in Supp (contending that Plaintiffs' Equal Protection theories are legally and factually insufficient). In particular, Defendants contend that Plaintiffs have failed to identify any comparator who was treated differently with respect to the challenged disciplinary or administrative actions. *Id.* (arguing that John Doe Scarpellino does not identify a comparator treated differently). Defendants further argue that Plaintiffs have not produced defendant-specific evidence of intentional discrimination, as required to sustain an Equal Protection claim under § 1983. *See* Regan Mem. in Supp., (relying on *Tangreti's* requirement that each defendant's own conduct must be shown to have violated the Constitution).

Michael Regan separately argues that Plaintiffs do not articulate any Equal Protection theory tied to his individual conduct and that summary judgment should therefore be granted both because the claim has been abandoned as to him and because it fails on the merits. *See* Regan Mem. at 13–14 (arguing that Plaintiffs identify no Regan-specific conduct supporting an Equal Protection violation). Plaintiffs respond by invoking general Equal Protection principles and asserting that differential treatment by school officials may give rise to constitutional liability. *See* Pls.' Consol. Mem., at 16.

The Court disagrees.

As a threshold matter, Plaintiffs have abandoned any Equal Protection claims as to Danielle Scarpellino, William Maisano, Gage Maisano, Jane Doe Maisano, Timothy Chamberlain, Eliza Chamberlain Lindsay, and John Doe Chamberlain. *See* Pls.' Consol. Mem. in Opp'n at 16–17 & n.6 (advancing Equal Protection arguments only as to John Doe Scarpellino and Mea Scarpellino); *see also* Defs.' Reply Mem. at 7 (noting Plaintiffs' concession that these plaintiffs do not assert Equal Protection claims). At a minimum, summary judgment must enter for the Defendants as to these plaintiffs on the equal protection claim. *See Wood*, 508 F. App'x at 66 (citing *Norton*, 145 F.3d at 117).

As to the remaining Equal Protection claims asserted by John Doe Scarpellino and Mea Scarpellino, those claims also fail on the summary-judgment record. Plaintiffs oppose summary judgment as to these two plaintiffs and proceed under selective-treatment and class-of-one theories, asserting that certain school officials disciplined or treated them differently from other students. *See* Pls.' Consol. Mem. at 16–17 & n.6. Even crediting Plaintiffs' theory, however, they have not produced evidence identifying any similarly situated comparator who was treated more favorably in materially similar circumstances by the same decisionmakers. *See* Defs.' Rule

56(a)(1) Stmt., ¶¶ 28–33, 39–41; Pls.' Rule 56(a)(2) Stmt., ¶¶ 28–33, 39–41 (admitting, *inter alia*, that John Doe Scarpellino did not self-censor his speech, was not disciplined based on political or religious beliefs, and was satisfied with how certain incidents were handled). Plaintiffs' opposition relies on allegations and disputed motivations but does not identify specific students, comparable incidents, or record evidence showing differential treatment under materially indistinguishable conditions. *See* Pls.' Consol. Mem. in Opp'n, ECF No. 70, at 16–17.

At this stage of the case, conclusory assertions are insufficient to create a genuine dispute of material fact. *Anderson*, 477 U.S. at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

Nor have Plaintiffs identified record evidence that any Defendant treated similarly situated students differently on the basis of a protected characteristic. *See* Regan Rule 56(a)(1) Stmt., ¶¶ 35–40, 42, 57–62 (stating that Regan did not interrogate students regarding political or religious beliefs, did not alter academic requirements or assignments based on such beliefs, treated John Doe Scarpellino in a manner consistent with other students, handled reported incidents in accordance with Board policy, and did not discriminate against John Doe Chamberlain on the basis of religion or any other protected characteristic). *See also* Defs.' Rule 56(a)(1) Stmt., ¶¶ 1–10 (stating that Mea Scarpellino did not self-censor in the classroom, was not compelled to speak about religion or politics, was not publicly confronted regarding her beliefs, and did not have her school assignments altered).

Instead, the Plaintiffs have done nothing more than identify routine school discipline and classroom management decisions, record evidence that, without a link to comparator evidence

and a plausible basis for a jury to infer discriminatory intent, falls short of creating a genuine issue of material fact warranting a trial. *See Harlen*, 273 F.3d at 500 (explaining that an equal protection claim cannot survive summary judgment where there is no showing "either that there was no rational basis basis for the unequal treatment received, or that the denial . . . was motivated by animus.")(citations omitted);*Giaccio*, 502 F. Supp. 2d at 387 (holding that the plaintiff "failed to identify any person to whom he was similarly situated, let alone a similarly situated person who received better treatment").

Likewise, any such equal protection claim against the Guilford Board of Education fails for the similar reason: there is no record evidence linking any alleged differential treatment to an official Board policy or custom. *See Legg*, 979 F.3d at 101 (recognizing that allowing local governments may be held liable only if their "policy or custom . . . inflicts the injury," and that a custom may be shown by acts "sufficiently widespread and persistent" or "inferred from evidence of deliberate indifference"). And the Plaintiffs have not identified any Board policy, decision, or widespread custom that caused the alleged constitutional deprivation.

As a result, in the absence of the Plaintiffs having "come forward with specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 323, there is no genuine issue of material fact as to their equal protection claim, and this claim fails as a matter of law. come forward with specific facts showing a genuine dispute as to differential treatment or intentional discrimination attributable to any defendant.

Accordingly, summary judgment will be granted as to the Plaintiffs' equal protection claim.

### E.    The Remaining State Law Claims

Having decided to dismiss all of the Plaintiffs' federal claims[2], the Court must determine whether to exercise supplemental jurisdiction over the remaining state law claims for common-law negligence, and intentional infliction of emotional distress. *See* 28 U.S.C. §1367(c)(3)(providing that "district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction.").

Under § 1367, "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The exercise of supplemental jurisdiction, however, "is a matter of discretion, not of right." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether to exercise jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

The Second Circuit has explained that "[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* At the same time, the court has emphasized

---

[2] Although the Court has dismissed all of the federal constitutional claims against the individual Defendants on the merits, the Court also recognizes that qualified immunity attaches to foreclose any relief against them in any event. As discussed above, there is no law, much less clearly established law, that would have put any of the individual Defendants on notice that their alleged acts – even construing them in Plaintiffs' favor --  violated Plaintiffs' First Amendment retaliation, First Amendment compelled-speech, First Amendment Free Exercise Clause, and/or Equal Protection Clause rights. *See Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017)("summary judgment of [qualified immunity] is available, if with the facts taken in the light most favorable to the plaintiff, the alleged constitutional right either was not violated or was not clearly established at the time of the alleged violation."); *see Id.* ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.")(citations and internal marks omitted). Accordingly, these federal claims would have to be dismissed for this independent reason, even if these claims could have otherwise proceeded to trial.

that this principle "clearly does not mean that the balance of the factors always points that way," and that "[w]hen § 1367(c)(3) applies, the district court must still meaningfully balance the supplemental jurisdiction factors." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 86 (2d Cir. 2018) (citation omitted).

Here, having dismissed all federal claims at the summary-judgment stage, and mindful of the values of judicial economy, convenience, fairness, and comity, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

Accordingly, those claims are therefore dismissed without prejudice to being pursued in state court.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment are **GRANTED**.

All of the federal claims are dismissed with prejudice.

The Court declines to exercise supplemental jurisdiction over the remaining state law claims, dismissing those claims without prejudice to being pursued in state court.

The Clerk of Court is respectfully directed to enter judgment in favor of Michael Regan, Paul Freeman, James Pappa, Giancarlo Moreno, Kathleen Balestracci, Kara Davis, Bruce Sumner, and the Guilford Board of Education, and to close the case here.

**SO ORDERED** at New Haven, Connecticut, this 6th day of February, 2026.